## CAMAROTA v. UNITED STATES.

### No. 7232.

Circuit Court of Appeals, Third Circuit.

April 9, 1940.

Rehearing Denied May 11, 1940.

John J. Quinn, U. S. Atty., of Trenton, N. J. (Joseph W. Burns, Department of Justice, of Washington, D. C., and William F. Smith, Asst. U. S. Atty., of Trenton, N. J., of counsel), for appellee.

Before BIGGS, MARIS, and JONES, Circuit Judges.

MARIS, Circuit Judge.

This is an appeal from a judgment of the District Court for the District of New Jersey, adjudging the appellant guilty of contempt of court. The appellant, subpoenaed as a witness before the United States grand jury at Newark, New Jersey, September 12, 1939, refused to answer certain questions on the ground that the answers might tend to incriminate him. He was told to appear before a district judge, who had convened court in the grand jury room, and did appear with his counsel. He was then advised by an assistant United States attorney that a presentment would be filed against him and was told to appear on September 19th before the district judge. On September 13th a presentment was filed with the clerk of the court and a copy mailed to counsel. No process was issued by the court. The appellant appeared before the district judge on the 19th, at which time the United States attorney moved to attach the appellant for contempt, and the appellant moved to dismiss the proceedings because there was no proper presentment and because no process had been issued. The motion to dismiss was denied. The appellant thereupon introduced evidence in support of his claim that his refusal to answer was justified on constitutional grounds. The court decided that the appellant should have answered certain of the questions,[1]

Frederic M. P. Pearse and Max Mehler, both of Newark, N. J., for appellant.

[1] The questions which the court held the appellant should have answered were the following:

"What is the name of your place of business? Did you at one time sell wire service to horse rooms?

"In 1932 [did you have any connection with wire service]?

"Did you have any connection with wire service in 1933?

"Did you have any connection with the wire service at any time?

"You get wire service in your horse room, don't you?

"You never paid for wire service in your horse room, did you?

"How long have you had a horse room in Atlantic City?

"What kind of work did Joe Camarato do?

"Didn't you have a switchboard in Atlantic City through which you delivered wire information to horse rooms?

"Well, did you at any time supply wire information or any racing information over the wire to any horse rooms in Atlantic City?

"In 1935 when you met Goodman what business did you have with him?

"Wasn't it business talk that you had with him?

"Did you have any conversation with Goodman about getting your wire information free in your own horse room?"

adjudged him guilty of contempt for refusing to do so and allowed him until September 26th to purge himself of his contempt. On that date, the appellant having failed to purge himself, the court imposed upon him a sentence of six months imprisonment.

■ The Fifth Amendment to the federal constitution provides that no person "shall be compelled in any Criminal Case to be a witness against himself." The protection of the amendment extends to an individual called as a witness before a federal grand jury.[2] It would, therefore, protect the appellant from being required to answer before the grand jury any questions which might incriminate him.

■ The appellant claims that he is the sole judge as to whether the answers would tend to incriminate him. This, however, is not the law. "When a question is propounded, it belongs to the court to consider and to decide whether any direct answer to it can implicate the witness," as Chief Justice Marshall long ago pointed out at circuit in United States v. Burr (In re Willie), Fed.Cas.No.14,692e. In The Queen v. Boyes, 1 Best. & S. 311, 121 Eng. Reprint 730, Chief Justice Cockburn said: "To entitle him [a party called as a witness] to the privilege of silence, the Court must see, from the circumstances of the case and the nature of the evidence which he is called to give, that there is reasonable ground to apprehend danger to the witness from his being compelled to answer." The foregoing statements of the rule were expressly approved in Mason v. United States, 244 U.S. 362, 37 S.Ct. 621, 61 L.Ed. 1198. It follows that a witness may claim the privilege of silence only if the court finds that there is reasonable ground to apprehend that a direct answer to the question may place him in real and substantial danger of incrimination.[3] Counselman v. Hitchcock, 142 U.S. 547, 12 S.Ct. 195, 35 L.Ed. 1110, relied on by the appellant, and Mason v. United States, supra, well illustrate the application of the rule to particular facts.

In Counselman v. Hitchcock, supra, the Supreme Court ruled that the witness was justified in refusing to answer the questions propounded by the grand jury because the existing immunity statute was insufficient to protect the witness from prosecution. An examination of the questions discloses beyond dispute that the answers might well have been made the basis for a criminal prosecution of the witness for violation of the Interstate Commerce Act, 49 U.S.C.A. § 1 et seq. In Mason v. United States, supra, the appellant was called upon to testify before a grand jury engaged in investigating a charge of gambling against six other men. He refused to answer whether he saw a game of cards being played at his own or another table, claiming that to answer the questions would tend to incriminate him. The judge directed that the appellant answer the questions and when he again refused adjudged him in contempt. The judgment was affirmed by the Supreme Court, which ruled that the trial court did not err in holding that the witness did not have reasonable cause to apprehend danger to himself from a direct answer to the questions propounded.

■ We think that the facts of the Mason case are essentially similar to those of the case before us. The incrimination which the appellant feared in the case before us was for violation of the federal income tax laws. The district judge held that direct answers to any of the questions which the appellant refused to answer could not have tended to incriminate him of such a charge. Most of the questions related to the sale of wire service to "horse rooms" in various years. A direct answer that the appellant was so engaged would not have tended to incriminate him even though answers to subsequent questions as to his receipts from such business might have done so. The same applies to the question as to what work the appellant's nephew did for him. Nor are we persuaded that the court erred in its interpretation of the evidence produced by the appellant at the hearing on the contempt charges. It may be that the answers to the questions might tend to incriminate the appellant of a violation of the gambling laws of the State

[2] Counselman v. Hitchcock, 142 U.S. 547, 12 S.Ct. 195, 35 L.Ed. 1110; Brown v. Walker, 161 U.S. 591, 16 S.Ct. 644, 40 L.Ed. 819; Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652; United States v. Caton, Fed.Cas.No.14,758.

[3] For an able discussion of the conflict between the privilege of the witness and the right of the state, see 4 Wigmore on Evidence, Second Edition, § 2271.

of New Jersey. This does not help him, however, since he may not invoke the immunity given by the Fifth Amendment to the federal constitution on the claim that his answers might show him guilty of a violation of a criminal law of a state.[4] We, therefore, conclude that the appellant was not justified in refusing to answer the questions which the court directed him to answer.

The power of the district courts to punish for contempt is limited by Section 268 of the Judicial Code, 28 U.S.C.A. § 385, which provides: "The said courts shall have power to impose and administer all necessary oaths, and to punish, by fine or imprisonment, at the discretion of the court, contempts of their authority. Such power to punish contempts shall not be construed to extend to any cases except the misbehavior of any person in their presence, or so near thereto as to obstruct the administration of justice, the misbehavior of any of the officers of said courts in their official transactions, and the disobedience or resistance by any such officer, or by any party, juror, witness, or other person to any lawful writ, process, order, rule, decree, or command of the said courts."

The appellant argues that the court was without jurisdiction to punish him because the presentment was insufficient and no process was issued. We find no merit in this contention.

Since the grand jury is an arm of the district court, proceedings before it are to be regarded as being proceedings in the court.[5] Consequently contempts occurring in the presence of the grand jury are to be treated as taking place in the presence of the court or so near thereto as to obstruct the administration of justice. They are subject, therefore, to be punished summarily by the court under Section 268 of the Judicial Code, supra, without indictment.[6] Such proceedings are not controlled by the limitations of the Constitution upon ordinary criminal prosecutions.[7] It is true that where, as here, the contempt was not committed in the actual presence and hearing of the district judge due process "requires that the accused should be advised of the charges and have a reasonable opportunity to meet them by way of defense or explanation."[8] But this is not to say that the proceedings must take any particular form so long as the substantial rights of the accused are preserved.[9]

The record in the present case discloses that the appellant entered the grand jury room prepared by counsel to claim protection against self incrimination as was his right, that he had opportunity on the same day when directed to appear before the district judge to consult with counsel as to the propriety of his stand upon each specific question which he had refused to answer, that he was then informed that a presentment for contempt would be lodged against him, that a copy of the presentment was mailed to his counsel, that though he was not served with a formal rule he was told personally to appear before the district judge and answer the charge arising out of his refusal to answer the questions propounded by the grand jury and that he did in fact appear with counsel at the stated time and place and offer evidence in his defense. All the rights to which a defendant in a contempt proceeding is entitled were thus given the appellant in substance.

The judgment is affirmed.

4 United States v. Murdock, 284 U.S. 141, 52 S.Ct. 63, 76 L.Ed. 210, 82 A.L. R. 1376; Graham v. United States, 9 Cir., 99 F.2d 746.

5 2 Bishop's New Criminal Procedure, § 868: "Though the grand jury sits in a room separate from the judge, it constitutes a part of the court, and is under the judicial control. Hence (3) a subpoena to a witness commands him to come, not before the grand jury, but the court to give evidence to the grand jury." United States v. Dachis, D. C., 36 F.2d 601.

6 O'Connell v. United States, 2 Cir., 40 F.2d 201, certiorari dismissed, 296 U.S. 667, 51 S.Ct. 658, 75 L.Ed. 1472.

7 Eilenbecker v. Plymouth County, 134 U.S. 31, 10 S.Ct. 424, 33 L.Ed. 801; In re Terry, 128 U.S. 289, 9 S.Ct. 77, 32 L.Ed. 405.

8 Chief Justice Taft in Cooke v. United States, 267 U.S. 517, 537, 45 S.Ct. 390, 395, 69 L.Ed. 767.

9 Ex parte Savin, 131 U.S. 267, 9 S. Ct. 699, 33 L.Ed. 150; Cooke v. United States, supra; O'Connell v. United States, supra; Lang v. United States, 2 Cir., 55 F.2d 922, certiorari denied 285 U.S. 533, 52 S.Ct. 408, 76 L.Ed. 928; United States v. McGovern, 2 Cir., 60 F.2d 880, certiorari denied 287 U.S. 650, 53 S.Ct. 96, 77 L.Ed. 561.