### UNITED STATES v. GREENBERG.
#### No. 10336.

United States Court of Appeals
Third Circuit.

Argued Jan. 4, 1951.

Filed Feb. 8, 1951.

Jacob Kossman, Philadelphia, Pa., for appellant.

Max H. Goldschein, Special Asst. to the Atty. Gen., (Gerald A. Gleeson, U. S. Atty. of Philadelphia, Pa., Justinus Gould, Drew J. T. O'Keefe, and Vincent P. Russo, Special Assts. to the Atty. Gen., on the brief), for appellee.

Before BIGGS, Chief Judge, and MARIS and HASTIE, Circuit Judges.

MARIS, Circuit Judge.

This is an appeal from a judgment of the United States District Court for the East-

ern District of Pennsylvania finding the appellant, Irving Greenberg, guilty of criminal contempt of court.

It appears that the appellant had been subpoenaed as a witness before the grand jury which was investigating the violation of various federal laws. He had answered many of the questions propounded to him but certain of them he declined to answer upon the ground that his answers thereto might tend to incriminate him of a federal crime. The appellant was then brought before the district court where his claim of privilege was challenged by the Government. The court, after hearing, found that there was no real or substantial danger of such incrimination and ordered the appellant to return and answer the questions before the grand jury. The appellant reappeared before the grand jury as directed but again refused to answer some of the questions upon the same ground.

Thereafter the grand jury filed in the district court a presentment against the appellant charging him with criminal contempt. The presentment charged that the appellant (a) had given obstructive and contumacious answers to the questions propounded to him before the grand jury and had thereby willfully, deliberately and contumaciously shut off and blocked the search for truth, thwarted the investigation of the grand jury and obstructed the administration of justice; and (b) had willfully, contumaciously and deliberately disobeyed and resisted the lawful order and command of the court by willfully and deliberately refusing to obey the order of the court to answer before the grand jury the questions in controversy. Charge (a) involved a violation of clause (1) of Sec. 401 of title 18, United States Code, Annotated, and charge (b) involved a violation of clause (3) of that section.[1] After a trial upon the presentment the district court found the appellant guilty of criminal contempt and sentenced him to undergo imprisonment of five months.

The questions which the appellant refused to answer and which were the subject of the presentment against him fall into three groups. The first is represented by the question "Are you in the numbers business now?" The second followed an affirmative answer by the appellant to the question "Do you know any number writers around there [referring to 1133 West Diamond Street, Philadelphia], men who are in the numbers business?" The next question, which appellant refused to answer, was "Who?" The final group of questions involved the appellant's admitted use of a telephone at 1133 West Diamond Street. The appellant had been asked "Do you use that phone in connection with your business?" and he had answered: "Not for my lawful business." He was then asked the questions: "Do you use it for any other business?" "And what business do you use it for?" He refused to answer these two questions. In each case his refusal to answer was, as we have stated, based upon his assertion that the answer would tend to incriminate him of a federal offense.

In the argument before this court the alleged incriminatory nature of an affirmative answer to the first question "Are you in the numbers business now?" was discussed at length. However, it appears from the record that this problem is not before us since the district court based the finding of contempt solely upon the appellant's refusal to answer the second and third groups of questions above mentioned and did not find that the appellant's refusal to answer this first question was a contempt of the court's order. We, therefore, do not here consider its alleged incriminatory character.

Moreover, the district court found the defendant guilty of criminal contempt only in that he had disobeyed the lawful orders and commands of the court, a violation of Sec. 401(3) of title 18, United States Code, Annotated. It did not find him guilty of the charge made in the presentment that

1. "§ 401. Power of court

"A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—

"(1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;

"(2) Misbehavior of any of its officers in their official transactions;

"(3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command."

he had willfully, deliberately and contumaciously shut off and blocked the grand jury's investigation by his refusal to answer its questions, thereby obstructing the administration of justice, misbehavior which would be a violation of Sec. 401(1) of title 18, United States Code, Annotated. Accordingly we do not have to consider whether the appellant, in claiming his constitutional privilege under advice of counsel, as he did, could be convicted of a criminal contempt consisting of misbehavior obstructing the administration of justice in violation of Sec. 401(1), as charged in the presentment of the grand jury. Certainly the assertion of a constitutional right if made in good faith on advice of counsel could hardly be described as such misbehavior.

■ Since the appellant admitted at his trial that he had disobeyed the order of the district court by refusing to answer before the grand jury the questions which the court had ordered him to answer and since his conviction of criminal contempt was based solely upon the finding that he had disobeyed a lawful order of the court, the only question properly before us on this appeal is whether the order of the district court to answer the second and third groups of questions was lawful. This turns upon whether or not the court was right in overruling the appellant's claim of privilege against self incrimination with respect to these questions. It does not depend, as the appellant asserts, upon whether the questions were relevant, competent or material to the grand jury's inquiry, for this was of no concern to him as a witness before that body. Nor does it depend upon whether or not the witness was himself under investigation by the grand jury. Blair v. United States, 1919, 250 U.S. 273, 39 S.Ct. 468, 63 L.Ed. 979. For he is entitled to assert his constitutional privilege against self incrimination regardless of that fact and in doing so was not, as we shall point out later, required to prove that the grand jury or the government actually had incriminating evidence against him. We turn then to the question properly before us.

In Camarota v. United States, 3 Cir., 1940, 111 F.2d 243, certiorari denied 311 U.S. 651, 61 S.Ct. 16, 85 L.Ed. 416, and very recently, with respect to questions asked a witness before this same grand jury, in United States v. Hoffman, 3 Cir., 1950, 185 F.2d 617, this court has had occasion to consider the extent of the privilege against self incrimination under the Fifth Amendment. We have followed Chief Justice Marshall's enunciation of the test in U.S. v. Burr (In re Willie), 25 Fed.Cas. p. 40 No. 14,692e, that: "When a question is propounded, it belongs to the court to consider and to decide whether any direct answer to it can implicate the witness. If this be decided in the negative, then he may answer it without violating the privilege which is secured to him by law. If a direct answer to it may criminate himself, then he must be the sole judge what his answer would be."

■ If, however, a direct answer to the question cannot under the particular circumstances of the case upon any reasonable theory disclose a fact which is, in the words of Chief Justice Marshall, "a necessary and essential part of a crime"[2] the question must be answered. To support the claim of privilege the danger must be real, not remote or fanciful. It must appear that the answer to the question may disclose a fact which will supply a link in the chain of evidence which is necessary to establish the commission of a crime by the witness. Mason v. United States, 1917, 244 U.S. 362, 37 S.Ct. 621, 61 L.Ed. 1198. It is not enough that answers to anticipated later questions might do so. Camarota v. United States, 3 Cir., 1940, 111 F.2d 243, certiorari denied 311 U.S. 651, 61 S.Ct. 16, 85 L.Ed. 416. Applying this rule the district court considered the questions here involved and decided that direct answers to them could not incriminate the appellant of any federal crime. We are satisfied that the court was right in so holding with respect to each of the two groups of questions in controversy on this appeal.

We take up first the group of questions relating to the use of the telephone at 1133

2. U. S. v. Burr (In re Willie), 25 Fed.Cas. p. 40, No. 14,692e.

West Diamond Street, Philadelphia. The appellant had stated in reply to previous questions that he had regularly used that telephone but that he had not used it for his lawful business. He declined, however, to answer questions as to whether he used it for any other business and, if so, for what business, claiming that to answer would incriminate him.

It must be conceded that some possible answers to a question as to a witness' business may be incriminating under the federal law. The witness may be by occupation an illicit dealer in narcotics, an illicit distiller or a counterfeiter. However, as this court pointed out in United States v. Hoffman, supra, "the question * * * is so frequently asked of witnesses as a mere identifying question that without more a court may well regard it as normally too innocent to fall within the Marshall principle." Accordingly the witness "must show the court enough beyond his bare statement of crimination at least to indicate that his claim was not clearly groundless, a contumacious assertion made in bad faith." [185 F.2d 621.]

 It is not necessary, of course, for the witness to prove that his answer would actually be incriminating, for to do so would be to lose the privilege in establishing it. Accordingly he need not prove that the government has in its possession or that the grand jury has secured from him or from other witnesses evidence which when the answer to the question under attack is added, will be sufficient to complete the chain of evidence needed to convict him of federal crime. Here, as we shall see, the court was justified in concluding that a direct answer could not reasonably form a link in that chain. Accordingly the court did not err in refusing appellant access to the grand jury minutes and to the files of the government.[3] Where, as here, the question was innocent on its face all that the appellant was required to do was to sat-

isfy the court that there was a reasonable possibility of the existence of facts in his situation and under the circumstances of his case which might convict him of a federal crime if a fact which might be disclosed by a direct answer to the controverted question were added to them.

In United States v. Hoffman, supra, the appellant sought, belatedly as we held, to meet this burden by allegations with respect to his reputation as a racketeer and notorious underworld figure and by references to newspaper articles which tended to support this reputation both generally and by specific allegation of prior conviction under the federal narcotics laws. We held that this would have been sufficient, if it had been offered in time, to establish circumstantially the likelihood that appellant's assertion of fear of incrimination was not mere contumacy. In the present case, however, the appellant made no such showing. He did not offer any reasonable basis for inferring that the nature of his business, as distinguished from the fact that he was in a business of some kind, might be a fact which, with other facts, would incriminate him of a violation of the federal law. We need not consider the clear inference that the disclosure of the nature of his business might convict him of a violation of state law. For, as we pointed out in Camarota v. United States, supra, the privilege against self incrimination given by the Fifth Amendment extends only to violations of the federal laws.

 The theory which the appellant advanced in support of his claim was that if he should state the business in which he used the telephone the next questions asked him would be whether he had derived income from that business, whether he had employees in that business, and whether he kept records of that business. His answers to these questions, he asserts, might tend to incriminate him of criminal violations of the internal revenue laws relating to the

3. We, of course, do not decide whether these contentions of the appellant would have been meritorious in connection with the charge contained in the presentment that he had contumaciously obstructed the administration of justice by block-

ing the inquiry being made by the grand jury, since the district court did not, as we have pointed out, convict him on this charge. That question may well involve other considerations.

income tax and the withholding of income and social security taxes from employees' wages. We do not have to decide, however, whether the defendant may claim his privilege with respect to these questions for they have not been asked. What we have to decide is merely whether a witness may decline to state his business, although itself not unlawful under the federal law, upon the theory that he may have violated some federal law in the course of the conduct of that business and that subsequent questions with respect to the conduct of his business may develop these delinquencies. We think that to pose this question is to answer it. For to approve the appellant's contention would mean that every business man would be entitled to decline to state his business merely because it might be possible that in carrying it on he had infringed the internal revenue laws or some other federal statute. This court ruled against this contention in Camarota v. United States, supra, when we held that Camarota was required to answer questions as to whether he had engaged in a certain business, not unlawful under the federal law, even though he contended that answers to anticipated subsequent questions as to his receipts from such business might tend to incriminate him of a violation of the income tax laws. See also United States v. Weinberg, 2 Cir., 1933, 65 F.2d 394, 395, certiorari denied 290 U.S. 675, 54 S.Ct. 93, 78 L.Ed. 583. We accordingly conclude that the court did not err in denying the appellant's claim of privilege with respect to these questions.

■ Turning to the other group of questions involved on this appeal it will be recalled that the appellant had already testified that he knew number writers around 1133 West Diamond Street, men who were in the numbers business. It was only when he was asked to name those whom he had said he knew that he asserted his privilege against self incrimination. As we have already indicated, the sole basis advanced by the appellant to support his fear of incrimination was that his answers might tend to show him guilty of the violation of the internal revenue laws. The appellant has not pointed out to us and we are unable to understand how disclosure by the witness of the names of the number writers whom he admits that he knows could form a link in a chain of evidence which would convict him of the violation of any of the federal statutes to which he refers. We are satisfied, therefore, that the order of the court directing appellant to answer this question was lawful and did not infringe his constitutional rights under the Fifth Amendment.

We have considered the other contentions made by the appellant but find them so lacking in substance as to require no discussion.

The judgment of the District Court will be affirmed.