## In re FRIEDMAN.

United States District Court
S. D. New York.
April 29, 1952.

420

Robert Goldstein, New York City, for Murray Friedman.

Myles J. Lane, U. S. Atty., New York City, Robert Rubinger, Asst. U. S. Atty., New York City, of counsel, for U. S.

WEINFELD, District Judge.

This is an application by the Commissioner of Internal Revenue pursuant to 26 U.S.C. § 3633 for an order directing Murray Friedman to answer a question propounded to him on September 12th, 1951, at a hearing conducted by a Special Agent of the Bureau of Internal Revenue under 26 U.S.C. § 3614. Friedman refused to answer, asserting the privilege against self-incrimination. The Government contends that the plea cannot be upheld because (1) the statute of limitations bars any prosecution of the witness under federal laws; and (2) possible incrimination involves a state crime.

Friedman had been questioned prior to the present inquiry. In 1948, the Commissioner of Internal Revenue conducted an investigation into Friedman's 1944 personal income tax return, wherein he had listed $1,800 as income derived from "commissions." Questioned as a witness, he admitted that he had been a collector in the "policy racket" and that the "commissions" referred to in his return were compensation for such activities. At that time he was not questioned as to the persons from whom he received the payments.

Three years later, on September 12, 1951, he appeared at the hearing out of which the present application arises, in response to a summons served upon him pursuant to 26 U.S.C. § 3614. Under investigation were the tax returns of Andrew Avitabile, Louis Avitabile and Sam Apuzzo, allegedly engaged in "policy" operations. Friedman admitted that he knew all of them and others about whom he was questioned. He also acknowledged that he had been a gambler. After a series of extended questions directed towards the witness' relations to, and various transactions with, the individuals whose tax returns were then under investigation, the inquiry was directed to the source of the $1,800 "commissions" reported in his 1944 return. Here he balked and refused to answer upon various grounds, all stated somewhat inconclusively. Finally, he claimed his privilege against self-incrimination. The precise question to which the Commissioner now seeks to compel an answer from the witness reads:

"The testimony which you gave in 1948 did not cover those persons from whom you received this money which you identified as commissions on policy work, therefore, I am introducing this at this questioning, and again I repeat my question—who gave you the money which you identified as $1,800. in commissions on your 1944 income tax return?"

■ The applicable law was recently restated in Hoffman v. United States, 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118:

"The privilege afforded not only extends to answers that would in themselves support a conviction under a federal criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime."

But one is not entitled to protection unless he has "reasonable cause to apprehend danger from a direct answer." Hoffman v. United States, supra, 341 U.S. at page 486, 71 S.Ct. at page 818. The mere assertion of privilege does not immunize him; the Court must determine whether his refusal is justified and may "require him to answer if 'it clearly appears to the court that he is mistaken'" in his refusal. Hoffman v. United States, supra, 341 U.S. at page 486, 71 S.Ct. at page 818. The claimant is not required to prove the precise danger, since by so doing he would "be forced to disclose those very facts which the privilege protects." United States v. Weisman, 2 Cir., 111 F.2d 260, 262. Finally, to "sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." Hoffman v. United States, supra, 341 U.S. at pages 486-487, 71 S.Ct. at page 818.

■ The Government contends that the witness is not entitled to invoke the privilege since his refusal was based on the ground that an answer might tend to incriminate for a crime under New York State law—that is, for "policy" or "numbers." It is true that the privilege is available only with respect to crimes made punishable by federal law, United States v. Murdock, 284 U.S. 141, 52 S.Ct. 63, 76 L.Ed. 210; United States v. St. Pierre, 2 Cir., 128 F.2d 979; Camarota v. United States, 3 Cir., 111 F.2d 243, and, therefore, had the witness relied solely on the state ground, he could not claim his privilege. The record discloses, however, that the claim was actually asserted on federal grounds as well, and, in particular, possible prosecution for violation of the Internal Revenue Laws.

■ Concededly, the claim was not stated by the witness with the meticulous clarity demanded of a legal craftsman, but fundamental rights do not hang by the tenuous thread of a layman's knowledge of the niceties of law. It is sufficient if it appears that he is attempting to assert his constitutional privilege. The plea, rather than the form in which it is asserted, determines whether the privilege against self-incrimination is to be upheld. Although inartistically expressed, it is clear that the witness intended to claim his privilege against possible federal, as well as state, prosecution. See United States v. St. Pierre, supra, 128 F.2d at page 980.

■ The Government next contends that no possible incrimination for federal offenses can exist since the applicable three or six year statute of limitations, 26 U.S.C. § 3748, bars any prosecution based upon the witness' 1944 return which contained the questioned item. This argument presupposes that criminality could arise only from acts committed in connection with that return and overlooks the possibility of his involvement in other federal violations.

The 1948 inquiry and the current one are investigations into violations of the Internal Revenue laws. The former was limited to the witness' 1944 return; the current inquiry relates to the tax returns of, and possible violations by, Andrew Avitabile, Louis Avitabile, Sam Apuzzo and others. The fact that the investigation is now directed towards others than the witness does not exclude the possibility of self-incrimination or deprive him of the right to assert the privilege. Blair v. United States, 250 U.S. 273, 39 S.Ct. 468, 63 L.Ed. 979.

Friedman has already admitted that he was engaged in "policy" activities; that he knows the persons currently under investigation for alleged violation of the Internal Revenue laws; that he had been in part-

nership with one of them in an allegedly legitimate business; and that he had engaged in extensive transactions with the partner and his brother, in the course of which he had issued a total of $50,000 in checks in the year 1944.

It is clear that the purpose of the question put to the witness in the current investigation was to ascertain those who made the "commissions" payments to him, and that his answer, if he were to name them, would supply some evidence in a prosecution against them based upon income tax law violations. However, such a response would not alone implicate those named but conceivably might supply a link which, together with other evidence in the possession of the Government, would connect the witness with participation in such violations by the others. A prosecution against those now under inquiry need not be confined to the substantive offense based upon violation of the Internal Revenue laws relating to their own returns. The ever-increasing use of the conspiracy count to accompany substantive offenses has been extended to personal income tax prosecutions. United States v. Johnson, 319 U.S. 503, 63 S.Ct. 1233, 87 L.Ed. 1546.

It is not without some significance that a number of questions were asked of the witness as to whether he had ever held money for the persons under immediate investigation. Thus, even though the statute of limitations may bar any prosecution against the witness with respect to his 1944 return, his answer might supply evidence sufficient to warrant joining him as a defendant together with the others in a continuing conspiracy to violate the laws with respect to their income tax returns. That this is a reasonable conclusion and not mere theory is apparent from a full examination of the testimony and the entire background of the question. Further, the answer given in 1948, if false, could be made the basis of a prosecution for perjury.

From the entire background and context surrounding the question, it does not clearly appear that the witness was mistaken in his claim. The Court, upon the entire record, is satisfied that he had reasonable cause to apprehend danger and that there exists a real, not a remote, danger that an answer may tend to incriminate him. The witness was justified in claiming his privilege.

The motion is denied.

Settle order on notice.