CARLISLE B. ROBERTS, Judge.
 

 The defendant herein mailed to the petitioner a 1978 personal income tax return form which, in each of the several spaces requiring a dollar number, contained only a typewritten asterisk. A footnote on page 1 of the form explained the asterisk as follows:
 

 "I hereby assert my rights, under the 5th amendment of the U. S. Constitution, to refuse to answer this question on the grounds that the answer may be used to incriminate me.”
 

 Attached to the return were a series of exhibits, one of which refers to a "Family Trust;” others are proffered to show the defendant’s reason for claiming the protection of the Fifth Amendment. (PI Ex 1.) They lack evidentiary value.
 

 
 *[369]
 
 The defendant had filed proper returns in years prior to 1978. In a letter dated June 27, 1979, the Oregon Department of Revenue advised the defendant and his wife (who had signed the return with him) that the form filed did not meet the statutory requirements of ORS Chapter 316 and quoted from the case of
 
 US. v. Porth,
 
 426 F2d 519 (10th Cir 1970), 25 AFTR2d 70-961, 70-1 USTC ¶ 9329,
 
 cert denied,
 
 400 US 824, 91 S Ct 47, 27 L Ed2d 53 (1970):
 

 "* * * A taxpayer’s return which does not contain any information relating to the taxpayer’s income from which the tax can be computed is not a return within the meaning of the Internal Revenue Code or the regulations adopted by the Commissioner. * * *”
 

 The letter stated that this rule was equally applicable under Oregon law and, further, that: "Noncompliance may subject you to prosecution under Oregon Revised Statute 314.991.” (PI Ex 2.) ORS 314.991 states that a person who, with intent to evade tax, fails to make, sign or verify any return or to supply any information required shall be subject to a penalty of not more than $1,000 and is also guilty of a misdemeanor and shall, upon conviction, be subject to a fine not to exceed $1,000 or be imprisoned not to exceed one year, or both.
 

 No return having been filed following the department’s demand (ORS 314.370), an order allowing an alternative writ of mandamus was filed in this court on January 3, 1980, pursuant to ORS 314.365, with a return date of February 12, 1980. On February 11, 1980, the defendant filed an "answer and demand for dismissal” which was held by the court to be without merit and therefore denied. Defendant failed to appear in court on February 12, 1980, and the court, on February 20, 1980, filed a peremptory writ of mandamus, requiring the filing of the 1978 return. A copy of the writ was served on defendant on March 4,1980, requiring him to show why the peremptory writ of mandamus should not be enforced. No response having been made by defendant, on petitioner’s motion, on
 
 *[370]
 
 March 18, 1980, the court issued its order upon the defendant, requiring him to appear before the court in Salem on April 3, 1980, to show cause, if any there be, why he should not be held in contempt of court for failure to comply.
 

 On April 2, 1980, Mr. Hoyt filed a "return” to the peremptory writ, showing that he had filed "a Form 40 for Oregon 1978” upon the Department of Revenue’s agent in Oregon City on March 28, 1980. Mr. Hoyt personally appeared on April 3, 1980 (and at that time it was proved that the "form” filed was a duplicate of the original invalid filing).
 

 On April 3, 1980, Mr. Hoyt was accompanied by a lay "advisor” but without an attorney at law. His rights were explained to him and he was given every opportunity to present his case on the merits. The layman was excluded from the bar of the court.
 

 No good cause being shown, either for failure to file the 1978 return or for failure to appear, an order was issued by the court on April 14, 1980, adjudging and decreeing that the defendant was found to be in contempt of court, but no constraints were then placed upon him, in view of his having orally advised the court that he was ready to comply with its order if allowed 30 days in which to gather his records and consult with an attorney at law and a certified public accountant. The court’s order, therefore, postponed full compliance until May 7, 1980.
 

 Thereafter, the defendant secured the services of Bradford T. Burke, Esq., Attorney at Law, Portland. Mr. Burke filed a petition for rehearing and leave to file a supplemental brief and, with his client, appeared before the court to argue his motion on April 23,1980. Finding that Mr. Burke was not fully prepared to argue the merits of the basic issue (the defendant’s utilization of the Fifth Amendment), the court gave him a list of the citations on which the court has relied and continued the opportunity for oral argument on the petition for rehearing until May 5,1980, in Salem.
 

 
 *[371]
 
 On that date, Mr. Burke appeared and introduced, as co-counsel, Donald W. MacPherson, Esq., a member of the Bar of the State of Arizona who, on Mr. Burke’s motion, was admitted to this court for this specific suit, to serve on behalf of the defendant. ORS 9.240. Mr. Apley appeared for petitioner. Thereafter, a full hearing was accorded; witnesses were produced and exhibits filed and argument made to the court to the effect that the defendant should not be required to do any other thing with respect to filing a 1978 return. However, the defendant, on questioning by the court, stated that he would fill in the blanks on an Oregon individual income tax return form for 1978 as follows: On page 1, he would fill in numbers of dollars for items numbered, 2, 3, 4, 8, 9, 10, 11, 12. On page 2, for items numbered 23, 24, 25, 26, 30, he would answer "none.” On the same pages, items numbered 7, 13, 15(d), 21, 27, 28, 31, 32, he would insert a question mark (standing for lack of information). On line 16, relating to dependents, he would insert "$3,000” (4 times $750). All the rest of the lines on the return would be filled: "Fifth amendment.”
 

 Mr. MacPherson made an eloquent argument in behalf of the defendant and cited a number of cases not hitherto studied by this court in explanation of the application of the Fifth Amendment of the U. S. Constitution in this type of case. The court has now had an opportunity to study the cases cited and, while agreeing that they are instructive, finds that they are not in point or are readily distinguishable from the facts in the present case or sustain the argument of the Department of Revenue.
 

 All that the petitioner is seeking in this suit is to require the taxpayer to file an Oregon personal income tax return with the "information relating to taxpayer’s income from which the tax can be computed.”
 
 See US. v. Porth, supra.
 
 The Department of Revenue and the Internal Revenue Service have called the taxpayer’s attention to the possibility of civil and criminal penalties but there has not been any evidence (although
 
 *[372]
 
 inferences were raised by defendant’s counsel) that any criminal action is contemplated by either the federal or state administrators with respect to the defendant. In fact, the court concludes that both agencies merely require the taxpayer to make a clear statement of his income as required by law and are giving him every opportunity to do so.
 

 An excellent exposition of the law applicable to the facts in this suit is to be found in
 
 US. v. Neff,
 
 615 F2d 1235 (9th Cir 1980), 45 AFTR2d 80-1217, and
 
 US. v. Carlson,
 
 617 F2d 518 (9th Cir 1980), 45 AFTR2d 80-1223. Nothing more is required. However, in hope of aiding the understanding of protesting taxpayers who are relying on lay advisers (as was Mr. Hoyt before he was represented by Messrs. Burke and MacPherson), the leading cases will be discussed herein.
 

 The foundation decision is
 
 United States v. Sullivan,
 
 274 US 259, 47 S Ct 607, 71 L Ed 1037, 6 AFTR 6753, 1 USTC ¶ 236 (1927). In that case, the defendant was convicted of wilfully refusing to file a personal income tax return as required by the Revenue Act of 1921. The court first ruled that the court below was right in holding that the defendant’s gains from illicit traffic in liquor were subject to the income tax. However, the Supreme Court reversed the lower court’s holding that the Fifth Amendment to the U. S. Constitution protected the defendant from the requirement of filing the income tax return. Mr. Justice Holmes delivered the opinion of the court from which the following quotation is taken (citations being omitted):
 

 "As the defendant’s income was taxed, the statute of course required a return. In the decision that this was contrary to the Constitution we are of opinion that the protection of the 5th Amendment was pressed too far. If the form of return provided called for answers that the defendant was privileged from making he could have raised the objection in the return, but could not on that account refuse to make any return at all. We are not called on to decide what, if anything, he might have
 
 *[373]
 
 withheld. Most of the items warranted no complaint. It would be an extreme if not an extravagant application of the 5th Amendment to say that it authorized a man to refuse to state the amount of his income because it had been made in crime. But if the defendant desired to test that or any other point he should have tested it in return [sic] so that it could be passed upon. He could not draw a conjurer’s circle around the whole matter by his own declaration that to write any word upon the government blank would bring him into danger of the law. * * *”
 

 This case is basic, although it can be distinguished factually from the suit at bar inasmuch as illicit activity on the part of the taxpayer in
 
 Sullivan, supra,
 
 was definitely established. On the other hand, there is no scintilla of evidence in the present suit that Mr. Hoyt was anything but an honest citizen and self-employed taxpayer, doing business as Cliff Hoyt Concrete Flat-work, as stated by him in his 1977 federal Form 1040, filed with the Department of Revenue as part of his Oregon return.
 
 See
 
 PI Ex 5.
 

 On the basis of the
 
 Sullivan
 
 case,
 
 supra,
 
 the courts have held that a taxpayer with taxable income must file a return. In
 
 US v. Carroll,
 
 567 F2d 955 (10th Cir 1977), 41 AFTR2d 78-442, the appellant, a "tax protestor,” was found to be in civil contempt for failure to obey a court order requiring compliance of a summons to produce records relating to his income taxes. His refusal to answer simple questions was based on a general claim of constitutional right, citing the Fourth Amendment (privacy) and the Fifth Amendment (self-incrimination). The court stated:
 

 "The circuits have held with great uniformity that a blanket refusal to answer questions does not suffice to raise constitutional questions.” (Citations omitted.)
 

 This follows
 
 United States v. Sullivan, supra.
 
 However,
 
 Gamer v. United States,
 
 424 US 648, 96 S Ct 1178, 47 L Ed2d 370 (1976), and
 
 Pauldino v. U.S.,
 
 500 F2d 1369 (10th Cir 1974), 34 AFTR2d 74-5672, 74-2 USTC ¶ 9653, underscore another aspect of
 
 Sullivan-,
 
 i.e., that if the taxpayer has reason to believe that he
 
 *[374]
 
 will incriminate himself by the answer to a question upon his personal income tax return, he
 
 must
 
 make his claim to the Fifth Amendment’s protection in that return as to that specific item or he is deemed to waive the claim.
 

 In
 
 Garner, supra,
 
 there was a prosecution on charges of conspiring to violate federal gambling statutes and the government introduced, over the defendant’s Fifth Amendment objection, the defendant’s income tax returns for certain years, which returns reported the defendant’s occupation as "professional gambler.” The defendant was convicted. On appeal to the Ninth Circuit (three judges sitting), the district court was affirmed, holding that defendant’s failure to assert the privilege against self-incrimination on his return defeated his later Fifth Amendment claim (501 F2d 228). This decision was reversed on a rehearing en banc (501 F2d 236), but the district court decision was reaffirmed on appeal to the U. S. Supreme Court (424 US 648, 96 S Ct 1178, 47 L Ed2d 370 (1976)). In that decision (424 US, at 655), Justice Powell stated:
 

 "* * * Despite its cherished position, the Fifth Amendment addresses only a relatively narrow scope of inquiries. Unless the Government seeks testimony that will subject its giver to criminal liability, the constitutional right to remain silent absent immunity does not arise. An individual therefore properly may be compelled to give testimony, for example, in a noncriminal investigation of himself. See, e.g., Gardner v. Broderick, 392 US 273, 278, 20 L Ed2d 1082, 88 S Ct 1913 (1968). Unless a witness objects, a government ordinarily may assume that its compulsory processes are not eliciting testimony that he deems to be incriminating. Only the witness knows whether the apparently innocent disclosure sought may incriminate him, and the burden appropriately lies with him to make a timely assertion of the privilege. If, instead, he discloses the information sought, any incriminations properly are viewed as not compelled.”
 

 Mr. Justice Clark, in
 
 Hoffman v. United States,
 
 341 US 479, 486, 71 S Ct 814, 95 L Ed 1118, 1124 (1951),
 
 *[375]
 
 describes some of the problems which face the witness and the court in the present situation:
 

 "The privilege afforded not only extends to answers that would in themselves support a conviction under a federal criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime. (Patricia) Blau v. United States, 340 US 159, ante, 170, 71 S Ct 223 (1950). But this protection must be confined to instances where the witness has reasonable cause to apprehend danger from a direct answer. Mason v. United States, 244 US 362, 365, 61 L ed 1198, 1199, 37 S Ct 621 (1917), and cases cited. The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself—his say-so does not of itself establish the hazard of incrimination. It is for the court to say whether his silence is justified, Rogers v. United States, 340 US 367, ante, 344, 71 S Ct 438, 19 ALR2d 378 (1951), and to require him to answer if 'it clearly appears to the comb that he is mistaken.’ Temple v. Commonwealth, 75 Va 892, 899 (1881). However, if the witness, upon interposing his claim, were required to prove the hazard in the sense in which a claim is usually required to be established in court, he would be compelled to surrender the very protection which the privilege is designed to guarantee. To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result. The trial judge in appraising the claim 'must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence.’ See Taft, J., in Ex parte Irvine, 74 F 954, 960 (CC SD Ohio 1896).”
 

 In
 
 Marchetti v. U.S.,
 
 390 US 39, 88 S Ct 697, 19 L Ed 889, 21 AFTR2d 539, 68-1 USTC ¶ 15,800 (1968), the court seeks to distinguish between those situations which create for the taxpayer "real and appreciable” hazards of self-incrimination (e.g., illicit gambling, racketeering, illicit lotteries) and those situations which are "merely 'imaginary and unsubstantial’.” In
 
 *[376]
 
 the first situation, the taxpayer cannot be required to provide information which would surely prove a significant "link in the chain” of evidence tending to establish his guilt. The court considered the bootlegger’s situation in
 
 United States v. Sullivan, supra,
 
 to be readily distinguishable from that of the petitioner in the
 
 Marchetti
 
 case in which "every portion of these requirements had the direct and unmistakable consequence of incriminating petitioner; the application of the constitutional privilege to the entire registration procedure was, in this instance neither 'extreme’ nor 'extravagant’.” (390 US, at 49.) The court held that the petitioner properly asserted the privilege against self-incrimination and that his assertion should have provided a complete defense in his prosecution for interstate gambling.
 

 This court holds that admissions of mere numbers, representing dollars, required by personal income tax returns, are "neutral,” in and of themselves, and the correct numbers must be used by Mr. Hoyt to fill in each blank on the return calling for numbers unless the word "none” can properly be entered. Such figures cannot incriminate him, per se, although some figure may stimulate a revenue agent to make further investigation and make additional demands upon the taxpayer (at which time, the use of the Fifth Amendment can again be considered).
 

 The court recognizes that an Oregon state income tax return ordinarily requires the inclusion of a copy of the federal personal income tax return for the same year (ORS 316.457) and that the requirement is applicable to the defendant with respect to his 1978 Oregon income tax return. Unlike the Oregon return, the federal return asks the taxpayer to state his occupation. If the taxpayer actually were engaged in illicit activities which provided him with taxable income, this would be one point where dependence upon the Fifth Amendment as a reason for not answering the question would be sanctioned by U. S. Supreme Court
 
 *[377]
 
 rulings,
 
 supra.
 
 However, the court cannot find that the
 
 figures
 
 required on pages 1 and 2 of IRS Form 1040 could possibly tend to incriminate the defendant. Again, the
 
 names
 
 of payers on Schedule B (Interest and Dividend Income) might be omitted under the protection of the Fifth Amendment in certain circumstances, but there would be no reason to withhold the
 
 figures.
 
 The same reasoning applies to other lines in other schedules. But nothing in Mr. Hoyt’s record indicates that he would incriminate himself by any answer respecting his business income or deductions.
 

 Public policy cannot permit the subversion of the present system of federal and state personal income taxation by permitting a taxpayer to refuse to answer pertinent questions and to enter dollar amounts in a personal income tax return and to file the necessary return annually, within the factual situation shown in this suit.
 
 Cf California v. Byers,
 
 402 US 424, 91 S Ct 1535, 29 L Ed2d 9 (1971).
 

 As stated in
 
 Hoffman v. US., supra,
 
 341 US 479, 487: "The trial judge in appraising the claim [of Fifth Amendment protection] 'must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence.’ ” In the present case the court is convinced that the defendant is not an individual "inherently suspect of criminal activities” in "an area permeated with criminal statutes” and he has no solid reason for adverting to the Fifth Amendment. (S
 
 ee Garner v. U.S.,
 
 501 F2d 236, 35 AFTR2d 75-526 (1974).) In the present case, witnesses from both the Internal Revenue Service and the Oregon Department of Revenue testified that no intent to use criminal penalties was known to them in Mr. Hoyt’s case.
 
 See E. Jan Roberts,
 
 62 TC 834 (1974).
 

 Defendant has impressed the court by the exhibit of letters written by federal and state tax administrators, citing statutory criminal penalties, threatening in nature. But defendant is premature in claiming Fifth Amendment protection as to figures to be inserted in
 
 *[378]
 
 the tax forms. In fact, in the court’s view, the record shows merely that the defendant, a cement contractor, failing to recognize the protection which government affords him and his business, impatient with some aspects of government, misled by lay advisors apparently ignorant that tax administrators regularly distinguish between substance and form, has sought tax avoidance by the creation of a "family trust” which the Department of Revenue contends cannot legally serve his purpose.
 
 CSee
 
 PI Ex 1.)
 

 A taxpayer is justified in refusing to answer questions where the danger of self-incrimination and prosecution under a tax law is real or credible. One is not entitled to protection unless he has reasonable cause to apprehend danger from a direct answer.
 
 In re Friedman
 
 (DC, SD, NY 1952), 104 F Supp 419, 41 AFTR 1266 (citing
 
 Hoffman v. U.S.,
 
 341 US 479, 71 S Ct 814, 95 L Ed 1118;
 
 U.S. v. Vadner et al
 
 (DC, ED, Pa 1954), 119 F Supp 330, 45 AFTR 717 (wherein the court refers to "the reputation and known history of the witness”)).
 

 Under the present case law, Mr. Hoyt’s Fifth Amendment claims fail, at this stage of the proceeding, because there is nothing peculiarly incriminating about his circumstances that justifies his reliance on the Fifth Amendment.
 
 U.S. v. Neff, supra; U.S. v. Carlson, supra
 
 (cited at 372 herein).
 

 Mr. Hoyt has sought to avoid, rather than to evade taxes. He had been led to believe that a legal mumbo jumbo exists which magically encapsulates the substance of an act and, through formalistic measures, renders his income legally invulnerable to taxation.
 

 His duty is to file bona fide forms and face up to his responsibilities to pay his taxes as the law requires. The escape he seeks can only be effected by congressional and legislative amendments. He is misusing the Fifth Amendment.
 

 
 *[379]
 
 As stated above, the defendant is before the court on a motion for a rehearing and leave to file a supplemental brief. Briefs have been received. The defendant’s rights have been fully protected by legal counsel. A hearing has, in effect, been achieved by defendant’s counsel. Further proceedings will serve no purpose and merely augment delay. The court deems itself fully advised. Therefore,
 

 IT IS ORDERED that defendant’s petition for a rehearing, filed in this court on April 14, 1980, should be and hereby is denied (having essentially been granted and the petition now being deemed moot);
 

 IT IS FURTHER ORDERED that this court’s order of April 14, 1980, holding the defendant, Clifford W. Hoyt, to be in contempt of this court, should be and hereby is affirmed (except for the date of execution, May 7, 1980);
 

 IT IS FURTHER ORDERED that counsel for petitioner shall prepare for the court’s signature a form of Warrant of Commitment addressed to the Sheriff of Clackamas County, ordering said sheriff to take the defendant into custody and to hold him in the county jail until (1) the defendant has purged himself of such contempt by filing a lawful Oregon personal income tax return for the year 1978 with an agent of the petitioner, stationed in Clackamas County, Oregon, named in the warrant, who has been instructed to receive it, and which is found acceptable by petitioner’s counsel, or (2) the defendant has appealed this order to the Oregon Supreme Court, pursuant to ORS 33.150, or (3) the defendant has been detained in the county jail for six months, whichever first occurs; and
 

 IT IS FURTHER ORDERED that the warrant of commitment shall instruct the Sheriff of Clackamas County and his deputies to cooperate with the defendant in all ways practicable to permit him to purge himself of the contempt while in custody, including but not limited to unrestricted telephonic or written
 
 *[380]
 
 communication with his attorney, his accountant or with the agent of the Department of Revenue stationed in Clackamas County and visitation by these persons.