**UNITED STATES v. SINGLETON.**

No. 10389.

United States Court of Appeals Third Circuit.

Argued April 3, 1951.

Reargued Oct. 15, 1951.

Decided Jan. 7, 1952.

Rehearing Denied Jan. 23, 1952.

Max H. Goldschein, Sp. Asst. to Atty. Gen., Gerald A. Gleeson, U. S. Atty., Philadelphia, Pa., Vincent P. Russo, Drew J. T. O'Keefe, Sp. Assts. to Atty. Gen., for the United States.

Before MARIS, GOODRICH and KALODNER, Circuit Judges.

KALODNER, Circuit Judge.

The primary issue on this appeal is whether the defendant's asserted apprehension of self-incrimination is well enough founded to justify his refusal to answer certain questions asked of him in the course of a grand jury investigation. The defendant's claim of constitutional protection was challenged in the District Court, which directed him to answer the questions. After returning to the grand jury, the defendant answered all but three questions: he refused to reply to the question "What business is he in?", with reference to three individuals;[1] the interrogatory in each instance was limited to the year 1950. The defendant did state that he has known two of the individuals for twelve years, and that the third is his nephew. For his persistent refusal to answer,[2] the defendant was adjudged in criminal contempt, the

Lemuel B. Schofield and Marvin Comisky, Philadelphia, Pa., for appellant.

1. George Pasquale, Joe Pasquale, and Marty Singleton. With respect to George Pasquale, the defendant was also asked "What does he do?".

2. The chronology with respect to the adjudication for contempt is as follows: On November 28, 1950, despite the fact that there was then pending defendant's motion to quash the attachment under which he had been taken into custody on November 20, 1950, and pursuant to which he had posted bail, the defendant voluntarily appeared before the grand jury and refused to answer certain questions, asserting his constitutional privilege against self-incrimination. As a result he was, on the same day, taken before the District Court. Counsel for the defendant asked that he be given an opportunity to consult with his client and review the situation. The request was granted. Defendant's counsel was given a transcript of the grand jury testimony covering only the series of questions involved. On November 29, 1950, the Court directed the defendant to answer. On the same day, in accordance with the suggestion of defense counsel, defendant appeared before the grand jury and answered questions put to him with respect to one Coffey but refused to answer the questions involved in the instant appeal. The defendant was immediately taken before the District Court. His counsel was given a transcript of the testimony before the grand jury that day. Again the Court ruled there was no real danger of incrimination and directed government counsel to have the grand jury make a formal presentment for contempt. On November 30, 1950, the grand jury returned its presentment; defendant, who was present with counsel was given another opportunity to answer and refused to do so. The presentment was filed the same day. On December 4, 1950, argument was heard on defendant's motion to quash the attachment and lift bail. On December 5, 1950, the Court denied the defendant's motion and proceeded to trial of the defendant on the presentment for criminal contempt. Following trial, the Court, the same day, adjudicated the defendant guilty of contempt and sentenced him to imprisonment for five months.

District Court having found that direct answers to the questions did not involve a real and substantial danger to the defendant of self-incrimination for a federal offense. From this judgment, the defendant appeals.[3]

In addition to the claim of privilege, the defendant contends that the District Court erred in denying to him a copy of the transcript of the grand jury proceedings relating to himself and to the three individuals involved, including the defendant's own testimony, and in denying to him the government file concerning him. He further contends that the judgment lacks validity because he was arrested upon an illegal warrant.

We are of the opinion that the judgment of the District Court is not erroneous.

■■ The applicable law admits of no dispute. "To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." Hoffman v. United States, 1951, 341 U.S. 479, at pages 486–487, 71 S.Ct. 814, at page 818, 95 L.Ed. 1118. While it must clearly appear to the Court that the claim is mistaken, nevertheless the protection of the Fifth Amendment is confined to instances where the witness has reasonable cause to apprehend real danger of incrimination of a federal offense from a direct answer. The mere claim of protection by the witness is not sufficient, but it is for the court, in the light of all the circumstances, to determine whether silence is justified. We therefore proceed to examine the instant case against the background of the Hoffman decision, bearing in mind that the formal record is not the exclusive criterion.

■■ Because the questions which the defendant refused to answer related to the general business of others than the defendant, it becomes pertinent to note the well-settled principle that the Fifth Amendment offers only personal protection. It does not permit the witness to premise his plea upon the fact that some third person might be, or even will be, incriminated by his testimony. Rogers v. United States, 1951, 340 U.S. 367, 371, 71 S.Ct. 438, 95 L.Ed. 344. Accordingly, the fact that the defendant's answer would disclose that other persons were engaged in conduct violative of federal law, without more, cannot relieve him of his obligation in the matter.

We recognize that the grand jury investigation which resulted in the Hoffman decision is the same investigation which resulted in this appeal. We have in mind the objectives of the investigation and the fact, of general knowledge, that there exists a class of people whose chief occupation involves evasion of federal proscriptions. The defendant here relies heavily upon the Hoffman "setting", and has referred to various newspaper articles and to his police record. But this case is initially a long step removed from Hoffman v. United States, supra, and from United States v. Greenberg, 3 Cir., 1951, 192 F.2d 201. The mere disclosure that others were engaged in a business in violation of federal penal laws would not tend to criminate the witness. The question does not indicate and a direct answer would not imply that the witness was engaged in any business, that he was joined with others in the conduct of their illegal business, or even that they were his employees. The witness therefore can have no fear of disclosing his violation of the various federal revenue laws, and the failure of third parties to comply with the various federal revenue laws incident to engaging in business and to receiving income would not affect the witness.

Placing the questions in the context of this case confirms the essential distinguishing factors between this and the Hoffman case, and supports the conclusion of the non-criminatory character of the questions involved.

3. The appeal was previously argued in this Court, but we directed reargument to permit examination of the cause in view of the decision in Hoffman v. United States, 1951, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118.

The defendant has, indeed, a long record of misconduct. His police record shows that he has largely replaced violence with the lottery, i. e., the "numbers racket". He was once, in 1947, arrested on a lottery charge, with an individual whose surname was Pasquale.[4] In 1935, he was arrested by Philadelphia police for possessing five gallons of white liquor and was "turned over" to federal authorities. Such newspaper accounts as were presented to the District Court and those to which the defendant has referred us, indicate clearly that the defendant is reputed to be involved in the "numbers racket", a purely local offense. Moreover, not merely is the record without other reference to the individuals whose business the defendant refused to state, but insofar as we can determine, they have not the notoriety of which notice may be taken. The newspaper accounts called to our attention do not indicate anything of significance concerning them. They were not yet sought by the grand jury, and if they were, the questions asked concerning them are totally unconcerned with their whereabouts. The defendant did not attempt to alter the picture by indicating, even generally, the character or reputation of these individuals. Finally, the defendant called as a witness the Special Assistant to the Attorney General, who testified that he had no knowledge of a business connection between the defendant, the two Pasquales, and Marty Singleton; that he had information that they were seen together; that he had no knowledge of the business of any of them; and that he had no evidence that the answers to the questions put to defendant would tend to incriminate him of a federal offense.

The instant case is manifestly distinguishable in this respect from United States v. Zwillman, 2 Cir., 1940, 108 F.2d 802. There, Zwillman was asked who were his business associates in the years 1928 to 1932. His claim of constitutional protection was upheld by the Court, for his counsel admitted that Zwillman had been engaged in the liquor business prior to 1933, when the Eighteenth Amendment was re-pealed; hence, proof of his associates might establish a conspiracy, with the burden upon Zwillman to prove its abandonment to take advantage of the statute of limitations. In the case at bar, answers to the interrogatories could not disclose that defendant was engaged in any business, that he violated a federal law, that he was associated with the Pasquales and Marty Singleton, or that they were his employees. This is true even though the defendant knows these men, or has been seen with them. Nor could there lurk danger of incrimination of a federal offense in the admission that he knows the general nature of their business. Absent this implication of association either in the question or direct answer, the fact that the Pasquales and Marty Singleton were engaged in a business in violation of federal law cannot, as we have already pointed out, constitute the legal basis for defendant's claim of protection.

We have heretofore held, in Camarota v. United States, 3 Cir., 1940, 111 F.2d 243, certiorari denied 311 U.S. 651, 61 S.Ct. 16, 85 L.Ed. 416, and recently reaffirmed, in United States v. Greenberg, supra, our conclusion that the apprehension of self-incrimination from answers to prospective questions is not a sufficient substitute for the requirement that the witness must entertain a reasonable apprehension of danger from direct answers to the questions at hand. We believe it clear that the mere disclosure of the business in 1950 of George and Joe Pasquale and Marty Singleton cannot infringe upon the defendant's constitutional rights. It might well have developed at some subsequent point in the defendant's interrogation that in its then posture, he could have properly asserted his claim of privilege. It is clear, however, that his assertion of privilege in response to the questions that were actually asked was patently premature.

We do not consider it decisive that the learned District Judge refused to permit inspection of the government file concerning the defendant, and also refused to grant

---

4. His first name was Anthony; the Pasquales figuring in the situation under review are George and Joe.

the defendant's motion to inspect the transcript of the whole of defendant's testimony before the grand jury, as well as such parts of the transcript of the grand jury's investigation having reference to the defendants, George Pasquale, Joe Pasquale, and Marty Singleton. The District Judge examined the government file and the grand jury transcript of the defendant's entire testimony to determine whether they contained material the defendant should have; upon concluding they did not, he impounded both to be included in the record on appeal, but did not consider any part of them in disposing of the case on the merits. He did advise the defendant that the government file contained his police record, an anonymous letter, and a résumé prepared by government counsel based upon material collected from newspaper accounts concerning the defendant, to which, insofar as we can determine, the defendant has referred us. Whether the defendant's police record should have been given to the defendant is unimportant. It has been furnished to us, not only along with the record on appeal, but by the defendant himself. Certainly it was known to the defendant. We have, as indicated, considered it, as the District Judge should have,[5] together with all the other information at our disposal in the liberal view of the Hoffman decision.

■ We agree that the District Judge was justified in protecting the traditional secrecy of the grand jury proceedings. We have, however, examined the testimony of the defendant before the grand jury, and find that the only relevant portions are

those made available to him. See footnote 2, supra. In any event, the issue is immaterial since we have concluded that a direct answer by the defendant to the questions as to the business in which others were generally engaged in 1950 could not per se possibly form a link in an incriminating chain against the defendant with respect to the federal laws.

■ The defendant's final defense is that he was arrested upon an illegal attachment and held under bail. We do not pause to state the circumstance in which the attachment was issued, or its purpose. It is sufficient to state the arrest antedated his appearance before the grand jury and the contempt upon which he was convicted; the contempt which is the subject of this appeal was not the basis for the warrant or the arrest. If the arrest was illegal, it does not follow, as the defendant contends, that the contempt proceeding must fail. It is our opinion that the defendant voluntarily appeared before the grand jury. In any event, we note that the defendant answered many questions, but his refusal to answer those here involved was based upon his assertion of the self-incrimination privilege. Moverover, the alleged illegal arrest is so far disconnected that it cannot suffice as an excuse for the offense here involved. The contempt proceeding is separate and independent of anything indulged in preliminarily. The defendant's predicament stems from contempt committed after his arrest and during his voluntary appearance.

For the reasons stated, the judgment of the District Court will be affirmed.

---

5. In his Order of January 3, 1951, impounding, inter alia, the government's file containing the defendant's police record, the District Judge stated "they * * * were not considered by this court in its final ruling and adjudication * * *"