## UNITED STATES v. FISCHETTI.

### Cr. No. 1254-51.

United States District Court
District of Columbia.
March 11, 1952.

Charles B. Murray, Asst. U. S. Atty., Washington, D. C., for plaintiff.

Charles E. Ford, Washington, D. C., for defendant.

TAMM, District Judge.

The defendant in this case was indicted by the Grand Jury of this Court for contempt of Congress. Title 2, Sec. 192, U.S. C.A. He refused to answer questions before a duly created Sub-committee of the

1. Senate Resolution No. 202 provides:
"*Resolved,* That a special committee composed of five members * * * is authorized and directed to make a full and complete study and investigation of whether organized crime utilizes the facilities of interstate commerce or otherwise operates in interstate commerce in furtherance of any transactions which are in violation of the law of the United States or of the State in which the transactions occur, and, if so, the manner and extent to which, and the identity of the persons, firms, or corporations by which such utilization is being made, what facilities are being used, and whether or not organized crime utilizes such interstate facilities or otherwise operates in interstate commerce for the development of corrupting influences in violation of the law of the United States or of the laws of any State: Provided, however, that nothing contained herein shall (1) authorize the recommendation of any

United States Senate Special Committee to Investigate Organized Crime in Interstate Commerce (popularly known as the Kefauver Committee). This Committee was conducting hearings pursuant to Senate Resolution No. 202 of the 81st Congress, 2d Session.[1]

Section 192 of Title 2 of the United States Code Annotated provides: "Every person who having been summoned as a witness by the authority of either House of Congress to give testimony or to produce papers upon any matter under inquiry before either House, or any joint committee established by a joint or concurrent resolution of the two Houses of Congress, or any committee of either House of Congress, willfully makes default, or who, having appeared, refuses to answer any question pertinent to the question under inquiry, shall be deemed guilty of a misdemeanor, punishable by a fine of not more than $1,000 nor less than $100 and imprisonment in a common jail for not less than one month nor more than twelve months."

At the trial of this case, the Government introduced evidence that the defendant was subpoenaed to appear before the Committee, that, upon his appearance he was asked certain questions and that he refused to answer these questions.

change in the law of the several States relative to gambling, (2) effect any change in the laws of any State relative to gambling, or (3) effect any possible interference with the rights of the several States to prohibit, legalize, or in any way regulate gambling within their borders. For the purposes of this resolution, the term "State" includes the District of Columbia or any territory or possession of the United States. * * *"
"Sec. 3. The committee, or any duly authorized subcommittee thereof, is authorized to sit and act at such places and times during the sessions, recesses, and adjourned periods of the Senate, to require by subpoena or otherwise the attendance of such witnesses and the production of such books, papers and documents, to administer such oaths, to take such testimony, to procure such printing and binding, and to make such expenditures as it deems advisable. * * *"

The questions which went unanswered were whether the defendant had a brother by the name of Charles, whether he was married and had children, and was in business, and whether he was going to refuse to answer any and every question asked by the Committee.

The defendant based his refusal to answer on the privilege against self-incrimination afforded him by the Fifth Amendment to the Constitution. At the conclusion of the Government's presentation of its case, the defendant moved the Court for a judgment of acquittal. This motion raises the question of whether the Government has established by its proof a violation of the statute which would permit the case to go to the jury.

The Fifth Amendment provides: "No person * * * shall be compelled in any criminal case to be a witness against himself". There have been a number of Supreme Court and Appellate Court decisions delineating the depth, as well as the breadth, of this constitutional guaranty. A thorough examination and consideration of these decisions has been made by the Court in reaching its decision on the defendant's motion.

The first and probably the most interesting of these cases historically arose out of the trial of Aaron Burr. United States v. Burr, 1807, 25 Fed.Cas. p. 38, No. 14,692e. One Willie, who had served as secretary to Colonel Burr, was shown a certain letter and asked if he understood the code in which it was written. He refused to answer, saying that he might incriminate himself. His claim of privilege was examined by Chief Justice Marshall who, sitting on circuit, was presiding at the trial. The Chief Justice stated, at page 40 of 25 Fed.Cas.: "When a question is propounded, it belongs to the court to consider and to decide whether any direct answer to it can implicate the witness. If this be decided in the negative, then he may answer it without violating the privilege which is secured to him by law. If a direct answer to it may criminate himself, then he must be the sole judge what his answer would be. The court cannot participate with him in this judgment, because

they cannot decide on the effect of his answer without knowing what it would be; and a disclosure of that fact to the judges would strip him of the privilege which the law allows, and which he claims. It follows necessarily then, from this statement of things, that if the question be of such a description that an answer to it may or may not criminate the witness, according to the purport of that answer, it must rest with himself, who alone can tell what it would be, to answer the question or not. If, in such a case, he say upon his oath that his answer would criminate himself, the court can demand no other testimony of the fact."

Following this decision, the protection afforded by the Fifth Amendment has been gradually and materially extended by a series of Supreme Court decisions. The most recent of these are United States v. White, 1944, 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542, Blau v. United States, 1950, 340 U.S. 159, 71 S.Ct. 223, 95 L.Ed. 170, Blau v. United States, 1951, 340 U.S. 332, 71 S.Ct. 301, 95 L.Ed. 306, and Hoffman v. United States, 1951, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118. The present status of the law is that: "The privilege afforded not only extends to answers that would in themselves support a conviction under a federal criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime." Hoffman v. United States, supra, 341 U.S. at page 486, 71 S.Ct. at page 818.

It appears clear to the Court that answers to the questions asked of the defendant (set forth above) would not "in themselves support a conviction under a federal criminal statute." Further consideration is required before a determination may be made whether the answers "would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime."

In the Hoffman case, supra, the Court stated further, 341 U.S. at page 486, 71 S.Ct. at page 818: " * * * if the witness, upon interposing his claim, were required to prove the hazard in the sense in which a claim is usually required to be established in court, he would be compelled

to surrender the very protection which the privilege is designed to guarantee. To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result. The trial judge in appraising the claim 'must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence.' See Taft, J., in Ex parte Irvine, C.C.S.D.Ohio 1896, 74 F. 954, 960."

■ It thus appears that the Court must construe the questions addressed to a witness in the light of the setting in which the questions were asked.

On cross-examination of the Government's witnesses, it appeared that the defendant's name had been prominently and unfavorably referred to over a long period of time prior to the actual appearance of the defendant before the Senate Committee. The defendant was identified on various occasions as being associated with various "crime syndicates" of Chicago and with members of the so-called "Capone gang." There are many references to the defendant in the reports of the Committee covering its investigations of crime prior to the appearance of the defendant before the Committee. The cumulative effect of these references persuades the Court to conclude that the Senate Committee was of the opinion that it had before it, in the person of the defendant, one who presently or had been in the past, engaging on a large and varied scale in forms of criminal activity and in association with prominent leaders of gangsterism in questionable "business" operations.

The Court believes that, under these circumstances, the defendant had every reason to be apprehensive as to what his answers might entail.

In the Hoffman case, supra, the defendant had been called as a witness before a special federal grand jury making a comprehensive investigation of violations of numerous federal criminal statutes and conspiracies to violate them. The defendant had been publicly charged with being known as an underworld character and a racketeer with a police record covering twenty years, including a prison sentence on a narcotics charge. The questions he refused to answer pertained to the nature of his present occupation and his contacts and connections with and knowledge of the whereabouts of a fugitive witness sought by the same grand jury.

In referring to the action taken by the Court of Appeals, 3 Cir., 185 F.2d 617, the Supreme Court said, 341 U.S. at page 484, 71 S.Ct. at page 817: "One judge dissented, concluding that the District Court knew that 'the setting of the controversy' was 'a grand jury investigation of racketeering and federal crime in the vicinity' and 'should have adverted to the fact of common knowledge that there exists a class of persons who live by activity prohibited by federal criminal laws and that some of these persons would be summoned as witnesses in this grand jury investigation.' "

The Supreme Court further observed in 341 U.S. at page 488, 71 S.Ct. at page 819: "In this setting it was not *perfectly clear*, from a careful consideration of all the circumstances in the case, that the witness is mistaken, and that the answer[s] *cannot possibly* have such tendency' to incriminate."

■ The Court believes that the language above quoted applies to the case before it. On the basis of the recent pronouncements of the Supreme Court to which reference has been made and in the light of the peculiar background and milieu surrounding the appearance of the defendant before the Senate Committee, the Court is of the opinion that it is required to grant the defendant's motion for judgment of acquittal. In so doing, the Court points out that the Supreme Court in the case of United States v. White, supra, stated in 322 U.S. at page 698, 64 S.Ct. at page 1251: "The prosecutors are forced to search for independent evidence instead of relying upon proof extracted from individuals by force of law. The immediate and potential evils of compulsory self-disclosure tran-

scend any difficulties that the exercise of the privilege may impose on society in the detection and prosecution of crime. While the privilege is subject to abuse and misuse, it is firmly embedded in our constitutional and legal frameworks as a bulwark against iniquitous methods of prosecution. It protects the individual from any disclosure, in the form of oral testimony, documents or chattels, sought by legal process against him as a witness."

The defendant's motion for judgment of acquittal is granted.