**UNITED STATES v. COFFEY.**

No. 10411.

United States Court of Appeals
Third Circuit.

Argued May 9, 1952.

Decided July 30, 1952.

Marvin Comisky, Philadelphia, Pa. (Lemuel B. Schofield, Marvin Comisky, Philadelphia, Pa., on the brief), for appellant.

Max Goldschein, Sp. Asst. to Atty. Gen. (Vincent P. Russo, Sp. Asst. to Atty. Gen., on the brief), for appellee.

Before GOODRICH, KALODNER and HASTIE, Circuit Judges.

HASTIE, Circuit Judge.

This is an appeal from an order of a district court adjudging the appellant, Coffey, in contempt of court because of his refusal to answer certain questions originally put to him as a witness before a federal grand jury. The witness was asked whether Jimmy Singleton and Marty Singleton were engaged in the numbers business and refused to answer, claiming under the Fifth Amendment constitutional privilege against self-incrimination.

In United States v. Singleton, 3 Cir., 1952, 193 F.2d 464 this court at this term sustained a contempt conviction of another witness predicated upon his refusal to answer very similar questions concerning the business of other persons. Certainly no more, arguably somewhat less, was shown in support of the claim of privilege in Singleton's case than in the present case. On May 12, 1952 the Supreme Court in a single order and without opinion granted Singleton a writ of certiorari and reversed his conviction. Singleton v. United States, 343 U.S. 944, 72 S.Ct. 1041. The per curiam order read: "The petition for writ of certiorari is granted and the judgment is reversed. Greenberg v. United States, 343 U.S. 918, 72 S.Ct. 674; Hoffman v. United States, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118."

We perceive no rational basis upon which the Court which reversed the Singleton conviction could affirm the conviction of Coffey in this case. Accordingly, the judgment of the district court must be reversed.

Beyond stating this result and that it is required by the Singleton case, we think we should attempt to spell out for the guidance of the district courts of this circuit in future cases our understanding of the reasoning upon which this result is predicated. For this purpose we review the series of cases which originated in the Eastern District of Pennsylvania during the last two years and involved the refusal of witnesses to answer questions before the federal grand jury which has been investigating the whole field of crime against the United States in this vicinage.

Our starting point is United States v. Hoffman, 3 Cir., 1950, 185 F.2d 617, reversed 1951, 341 U.S. 479, 71 S.Ct. 814, 95 L. Ed. 1118. For present purposes it is necessary to consider only that Hoffman had refused to answer questions as to his knowledge of the whereabouts of one Weisberg, shown to be a person whom the grand jury wished to interrogate and for whom a subpœna had been issued, but whose whereabouts remained unknown to the grand jury and those assisting it at the time Hoffman testified. We thought the witness might properly be required to answer. It was not apparent to us on the data at hand how "appellant's admission that he had seen Weisberg within the week, or had talked to him within the week, or that he knew where he was, or a statement when he last saw him, could come dangerously close to involving him in a federal offense. We [could not] see that any answer to this would be likely to differentiate appellant at all or in any significant way from a considerable number of blameless people." See 185 F.2d at 620. However, the Supreme Court reversed our decision.

The Court seemed to be saying in substance that if the witness were required to tell when and where he had last seen Weisberg, the time and place thus revealed might themselves suggest that the witness was helping Weisberg remain out of sight, or even providing a hiding place for him. And reasoning that such concealment might be a criminal obstruction of justice, the Court treated this case very much as if a question had been asked a grand jury witness concerning the whereabouts of a convict recently escaped from federal prison. In the latter case a claim of privilege would rather clearly have to be sustained because any informative answer would obviously suggest criminal complicity in the prisoner's continuing enlargement. Apparently, our error had been in not perceiving the similar inference of wrongdoing which the Supreme Court saw in any admission of contact with Weisberg, the missing witness.

After Hoffman's case came Greenberg's. United States v. Greenberg, 3 Cir., 1951, 187 F.2d 35. Greenberg, called as a grand jury witness, had refused to identify the business in which he used a particular telephone or to identify "numbers runners" known to frequent a particular locale. We found no basis in the record for inferring that revelation of Greenberg's business or his acquaintance with numbers runners might have helped expose him to federal prosecution. Accordingly, we held that the district court properly punished him for refusing to answer. However, the Supreme Court granted certiorari and remanded the case to us for reconsideration in the light of its disposition of the Hoffman case. Greenberg v. United States, 341 U.S. 944, 71 S.Ct. 1013, 95 L.Ed. 1369.

Upon such reconsideration we still thought the Hoffman and Greenberg cases could and should be distinguished. United States v. Greenberg, 3 Cir., 1952, 192 F.2d 201. Our conception of the significance of the Supreme Court opinion in the Hoffman case has already been stated. There the Court seemed to think the answer of the witness might in itself suggest wrongdoing. The Greenberg situation seemed to differ in that there was nothing in the nature of the questions and nothing else of evidentiary nature in the record to suggest how the identification of Greenberg's business or the naming of certain numbers runners might involve the witness in federal crime. True, counsel had urged as a matter of argument that the witness might fear that his answer might suggest subsequent questions or investigations which in turn might reveal that he was a proprietor who employed other persons in the numbers business, that the numbers runners in question were among his employees, that he was required by the laws of the United States to withhold part of their wages and to make certain returns for income and social security tax purposes and that he had willfully failed to do so, thus subjecting himself to federal criminal prosecution. But to us it seemed that there were too many facts missing, without evidence to suggest their existence, between the matter of the use made of Greenberg's telephone or his possible acquaintance with certain numbers runners and any violation of the income tax or social security laws for the claim of privilege to be sustained. It seemed a helpful analogy that in the case of United

States v. Weisman, 2 Cir., 1940, 111 F.2d 260, a question whether a witness had received mail at a particular address was deemed dangerous so that an answer should not be required, only because it had been shown that government investigators had reason to believe that information in aid of illicit narcotics trade was being transmitted to that address. No similar fact showing that real danger might be involved in the answer of an apparently innocuous question was in evidence here. This deficiency seemed fatal to the claim of privilege.[1]

We also had in mind that in Mason v. United States, 1917, 244 U.S. 362, 37 S.Ct. 621, 61 L.Ed. 1198, the Supreme Court had held that a man might be required to answer a question whether cards were being played at a table where he had been sitting in an Alaskan billiard parlor. And the stated reason was that nothing had been shown to indicate that such play involved gambling. We regarded this case as particularly striking, even extreme, in its insistence upon an affirmative showing that an answer innocent on its face had sinister implications; for the normal connotation of a card game in a frontier saloon is not that of a game of Old Maid on a supervised public playground. Moreover, we felt duty bound to regard the Mason case as a significant precedent because the Hoffman opinion had cited Mason, apparently with approval.

For these reasons we thought our Greenberg decision was correct and consistent with what the Supreme Court had intended in the Hoffman opinion. However, the Supreme Court granted certiorari and reversed our Greenberg judgment without opinion, entering only this order: "Judgment reversed. Hoffman v. United States, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118". Greenberg v. United States, 1952, 343 U.S. 918, 72 S.Ct. 674.

Shortly thereafter, as already stated, the Court without opinion reversed our Singleton decision; and Singleton's claim of privilege was on the record even weaker than Greenberg's. For he was asked in what business three other persons were engaged, and there was nothing before the court to suggest a business association between them and the witness.

■ Accordingly, we now have to reinterpret the Supreme Court's Hoffman opinion in the light of that Court's subsequent revelation that Hoffman proceeds on a theory broad enough to require the same result in the circumstances of Greenberg and Singleton. Specifically, we think the problem is what to do about apparently innocuous questions, the answers to which are admittedly not incriminating in themselves, when there are no additional facts before the Court which suggest particular connecting links through which the answer might lead to and might result in incrimination of the witness. We think the Supreme Court is saying that such facts are not necessary to the sustaining of the privilege. The decision in the Mason case would not be followed today. It is enough (1) that the trial court be shown by argument how conceivably a prosecutor, building on the seemingly harmless answer, might proceed step by step to link the witness with some crime against the United States,[2] and (2) that this suggested course and scheme of linkage not seem incredible in the circumstances of the particular case. It is in this latter connection, the credibility of the suggested connecting chain, that the reputation and known history of the witness may be significant.

Finally, in determining whether the witness really apprehends danger in answering a question, the judge cannot permit himself to be skeptical; rather must he be acutely aware that in the deviousness of crime and its detection incrimination may

1. In a later case where a showing, including evidence that the witness had not filed income tax and social security returns, revealed a likely basis of real danger we sustained the claim of privilege. United States v. Girgenti, 3 Cir.1952, 197 F.2d 218.

2. Neither in the Hoffman opinion nor in the cases which follow it does the Court impair its earlier rule that the Fifth Amendment affords no protection against self-incrimination of a state offense. United States v. Murdock, 1931, 284 U. S. 141, 52 S.Ct. 63, 76 L.Ed. 210.

be approached and achieved by obscure and unlikely lines of inquiry.

The judgment of the district court will be reversed.

KALODNER, Circuit Judge, concurs in the result.