In the Matter of Mary PORTELL.
UNITED STATES of America, Plaintiff-Appellee,

v.

Mary PORTELL, Defendant-Appellant.

No. 11935.

United States Court of Appeals Seventh Circuit.

June 4, 1957.

Morris A. Shenker, Sidney M. Glazer, St. Louis, Mo., for appellant.

C. M. Raemer, U. S. Atty., Edward G. Maag, Asst. U. S. Atty., East St. Louis, Ill., for appellee.

Before DUFFY, Chief Judge, and FINNEGAN and SWAIM, Circuit Judges.

DUFFY, Chief Judge.

Appellant, Mary Portell, was subpoenaed under the name of Mary Dunn, to give testimony before a Federal Grand Jury in the Eastern District of Illinois. Appellant was adjudged in contempt by the United States District Court for the Eastern District of Illinois for failing to answer a question propounded to her by the grand jury. The Court committed her to the custody of the United States Marshal for imprisonment until she answers the question or until she is otherwise discharged according to law. Appellant presently is in prison under this judgment. Error is asserted in the overruling of appellant's claim of privilege against self-incrimination, improper procedure used in adjudging her in contempt and the exclusion of certain newspaper articles from evidence.

There seems to be no dispute that the grand jury was investigating alleged racketeering in the Eastern District of Illinois. In particular, an investigation was being made into the activities of one Frank (Buster) Wortman, a reputed gangster and gang leader who was alleged to be the Southern Illinois representative of the old Capone gang. The investigation apparently covered also the activities of Wortman's close associates, including Barney Barts, who had been

in hiding since the early stages of the inquiry. News stories stated Barts had many aliases, some being similar to the names of persons who were listed as incorporators of several of the Wortman enterprises. Other news stories stated the appellant had several aliases and was a frequent companion of Barts.

On November 28, 1956, appellant appeared before the grand jury. After answering some preliminary questions, she refused to answer a question as to where she lived before she went to Farmington, Missouri, and as to whether she was married, claiming privilege against self-incrimination. On the following day she was brought before the District Court which overruled the claim of privilege, and directed her to return to the grand jury room to answer the questions which she had theretofore refused to answer. On November 30, 1956, appellant appeared before the grand jury and did answer the questions as directed. She was then asked additional questions, but when asked the street number where she lived on Moffatt Avenue in Collinsville, she refused to answer, claiming her constitutional privilege against self-incrimination. On the same ground, she also refused to answer a question as to whom she was living with in Farmington.

On December 6, 1956, appellant was again brought before the District Court. Appellant's counsel attempted to offer in evidence, various newspaper articles for the purpose of showing the setting and background in which the questions were asked, and in which appellant's claim of privilege was made. The Court refused to admit the articles in evidence, overruled appellant's claim of privilege, and directed her to answer the questions. She returned to the grand jury room and did answer the questions as directed by the Court, but during subsequent questioning she refused to answer the question "Will you tell us where you lived before you lived on Moffatt Avenue in Collinsville, Illinois?"

Appellant was again brought before the District Court which listened to the argument of appellant's counsel on the

question of self-incrimination, and also an explanation of the reasons for her refusal to answer the question. Counsel explained it was apparent the Government's attorney would ask appellant whether she was or had been living with Barney Barts.

■ We hold the Court erroneously excluded the newspaper clippings. As in Hoffman v. United States, 341 U.S. 479, 487, 71 S.Ct. 814, 95 L.Ed. 1118, they should have been received to show the background and setting under which the privilege was claimed. These clippings disclosed that Barney Barts was a close associate of the gangster Wortman; that the appellant had several aliases and was a frequent companion of Barts who had been missing since the early days of the inquiry. Such information would be a reasonable basis for appellant believing that the Government was trying to locate Barts by asking where she lived, or with whom she had been living.

A person seeking to invoke the privilege against self-incrimination may often find himself in a difficult situation. In Rogers v. United States, 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344, it was held the witness had waived the privilege because the claim was not made early enough in his testimony. As stated by Justice Black in his dissenting opinion (340 U.S. at page 378, 71 S.Ct. at page 444) "Moreover, today's holding creates this dilemma for witnesses: On the one hand, they risk imprisonment for contempt by asserting the privilege prematurely; on the other, they might lose the privilege if they answer a single question. The Court's view makes the protection depend on timing so refined that lawyers, let alone laymen, will have difficulty in knowing when to claim it."

■ In United States v. Courtney, 2 Cir., 236 F.2d 921, 923 the Court stated that " * * * since the decision in Rogers v. United States, * * * the Supreme Court has, in general, more generously interpreted the Fifth Amendment privilege." Such cases as Hoffman v. United States, 341 U.S. 479, 71 S.Ct.

814, 95 L.Ed. 1118; Emspak v. United States, 349 U.S. 190, 75 S.Ct. 687, 99 L.Ed. 997, and Trock v. United States, 351 U.S. 976, 76 S.Ct. 1048, 100 L.Ed. 1493, would seem to bear out this statement. It is, of course, our duty to reflect as best we can the attitude of the United States Supreme Court upon the questions before us for decision.

In Hoffman v. United States, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118, the petitioner refused to answer certain questions asked by a grand jury which was making a comprehensive investigation of violations of numerous federal criminal statutes and conspiracies to violate them. The questions he refused to answer, in part, were as to his contacts and connections with and the knowledge of the whereabouts of a fugitive witness sought by the same grand jury. The Court said, 341 U.S. at page 486, 71 S. Ct. at page 818: "The privilege afforded not only extends to answers that would in themselves support a conviction under a federal criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime. * * * However, if the witness, upon interposing his claim, were required to prove the hazard in the sense in which a claim is usually required to be established in court, he would be compelled to surrender the very protection which the privilege is designed to guarantee. To sustain the privilege it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result."

In Quinn v. United States, 349 U.S. 155, at page 162, 75 S.Ct. 668, at page 643, 99 L.Ed. 964 the Court said: "Coequally with our other constitutional guarantees, the Self-Incrimination Clause 'must be accorded liberal construction in favor of the right it was intended to secure.' Such liberal construction is particularly warranted in a prosecution of a witness for a refusal to answer, since the respect normally accorded the privilege is then buttressed by the presumption of innocence accorded a defendant in a criminal trial. To apply the privilege narrowly or begrudgingly—to treat it as an historical relic, at most merely to be tolerated—is to ignore its development and purpose."

In Trock v. United States, 351 U.S. 976, 76 S.Ct. 1048, 100 L.Ed. 1493 the Supreme Court reversed a contempt conviction which had been sustained by the Court of Appeals in United States v. Trock, 2 Cir., 232 F.2d 839. Trock had refused to answer questions before a grand jury such as "Did you ever stay at the Hotel Victoria in New York City?" "Did you ever have any offices at 250 Broadway in New York?" "Did you ever have an office in 246 Fifth Avenue, New York City?" An Assistant United States attorney told the Court that Trock might have some knowledge of operations or have some knowledge of the whereabouts of a fugitive who had been indicted. The Court of Appeals held these questions to be innocuous, and that the claim of privilege was premature. Nevertheless, the Supreme Court reversed, citing Hoffman v. United States, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118.

Paraphrasing the statement of the Supreme Court heretofore quoted from Hoffman v. United States, we think it is evident from the implications of the question asked of appellant, in the setting in which it was asked, that injurious disclosure could result from a responsive answer. Such an answer might have incriminated her under Title 18 U.S.C. § 3. It might have linked her with Barts and Wortman and thus connected her with an illegal conspiracy. Under the doctrine established by Hoffman v. United States, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118; Emspak v. United States, 349 U.S. 190, 75 S.Ct. 687, 99 L.Ed. 997; Quinn v. United States, 349 U.S. 155, 75 S.Ct. 668, 99 L.Ed. 964 and Trock v. United States, 351 U.S. 976, 76 S.Ct. 1048, 100 L.Ed. 1493, and carried out in such cases as

United States v. Courtney, 2 Cir., 236 F.2d 921; Maffie v. United States, 1 Cir., 209 F.2d 225 and Kiewel v. United States, 8 Cir., 204 F.2d 1, it would appear that appellant's claim of privilege should have been sustained.

We hold it was error for the District Court to have excluded the news stories and clippings from evidence. The Court should have given consideration to same in order to show the background and setting under which the privilege was claimed.

Reversed and remanded for further proceedings not inconsistent with this opinion.

SWAIM, Circuit Judge (dissenting).

This is another of many recent cases involving the privilege against self-incrimination which has been asserted in the course of federal grand jury investigations. A witness in a grand jury inquiry, unlike the accused in a criminal case, has never been allowed, by the simple expedient of claiming privilege, to refuse to answer any questions at all. To prevent the subversion of the public interest in the conduct of such proceedings, reasonable bounds have been placed upon the exercise of the privilege. Thus, the claim of privilege is confined to instances where the witness has reasonable cause to apprehend danger from a direct answer. Hoffman v. United States, 341 U.S. 479, 486, 71 S.Ct. 814, 95 L.Ed. 1118.

It was incumbent upon the District Court, in appraising the claim of privilege, to consider the setting and background in which the question was asked and such other circumstances as might make the question incriminatory. Hoffman v. United States, supra. Turning to the record before us we find the following: A federal district grand jury was engaged in an investigation into alleged racketeering activities in the Eastern District of Illinois and particularly the activities of one Frank Wortman. We know as a matter of common knowledge that there exists a class of persons who live by activity prohibited by federal criminal laws and that some of these persons would be summoned as witnesses in this grand jury investigation. Appellant was summoned under an assumed name to appear before the grand jury as a witness. Except for an alleged association with one Barney Barts, it does not appear that appellant has a reputation and known history as an underworld character. And except for certain newspaper articles, there is nothing in this record that indicates or even suggests that appellant was called to testify before the grand jury as anything other than a good citizen who might be able to throw light upon the matter under investigation—I realize, of course, that circumstances can present themselves where even a good citizen may have occasion to exercise his privilege.

After appellant had appeared before the District Court for the second time and had been directed to answer certain questions, she returned to the grand jury room where the questioning was resumed.

"Q. Where did you live before that? A. 205 West Lincoln, Caseyville, Illinois.
*  *  *  *  *  *
"Q. How long did you live there? A. About a year, I guess.

"Q. Where did you live before you lived at Caseyville? A. Collinsville.

"Q. Where in Collinsville? A. Moffatt Avenue. *These are not the questions the Judge ordered me to answer are they?*" (Emphasis added.)

Appellant promptly refused to answer the next two questions asked of her. I think appellant's conduct belies her claim of privilege and shows her to be nothing other than a reluctant witness, disposed to make a specious claim that might relieve her from testifying, though not for the purpose of protecting herself against self-incrimination.

The newspaper articles on which appellant so heavily relies were excluded by the District Court on the government's objection thereto. However, I think the result in this case should be

the same even when appellant is given the benefit of the disputed newspaper articles. Appellant asserts that the articles link her with Barney Barts, a person who has evaded service of a grand jury subpoena and is in hiding, and who is a close associate of Wortman, the key figure in the investigation; and that some of the witnesses who have appeared before the grand jury have had indictments returned against them. Even upon the assumption that government counsel was intent on delving into the relationship of appellant with Barts, with all the incriminatory implications suggested by appellant, I am at a loss to see how this could possibly make the particular question which she refused to answer incriminatory. Under no reasonable hypothesis could a responsive answer to this question furnish evidence of guilt or supply a lead to obtaining such evidence.

Appellant's most plausible argument—that she might be hiding Barts and consequently guilty of obstructing justice—is too tenuous, for how can it be said that disclosure by appellant of her place of residence in 1955, more than a year before the grand jury was empaneled and before Barts was ever sought as a witness, would be incriminatory. On this record even the loose test enunciated in United States v. Coffey, 3 Cir., 198 F.2d 438, 440, is not met, for even granting that counsel for appellant has shown "by argument how conceivably a prosecutor, building on the seemingly harmless answer, might proceed step by step to link the witness with some crime against the United States," the suggested course and linkage here are too far removed from the question which appellant refused to answer. It is, of course, true that one in appellant's apparent situation faces a problem—waiver of her privilege, if she answers a question later held to be incriminating, see Rogers v. United States, 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344, and contempt, if she refuses to answer a question later held to be nonincriminating. "And it

may be that in some circumstances the privilege should be held to extend to questions which are not in themselves incriminatory, but which seem likely to lead to other questions which are," Emspak v. United States, 349 U.S. 190 212, 75 S.Ct. 687, 708, 99 L.Ed. 997, and this is what the majority has done in the instant case. But I fail to see any circumstances here which would warrant an extension of the usual bounds of the privilege.