**Matter of Sally Ann HITSON and Shirley Joyce McGowan.**

**Misc. No. 1245.**

United States District Court
N. D. California, N. D.
Sept. 11, 1959.

Milton L. Baldwin and Harry J. Englebright, Sacramento, Cal., for Sally Ann Hitson.

William H. Lally, Sacramento, Cal., for Shirley Joyce McGowan.

Robert E. Woodward, Asst. U. S. Atty., Sacramento, Cal., for the United States.

HALBERT, District Judge.

Sally Ann Hitson and Shirley Joyce McGowan were each called as a witness before the Grand Jury of this Court. After being duly sworn, questions were asked of each of these witnesses concerning matters being investigated by the Grand Jury, and each of these witnesses refused to answer certain of those questions on the ground that to do so might tend to incriminate her. The Foreman of the Grand Jury reported those facts to the Court, and asked the Court for advice and assistance in determining the propriety of the privilege claimed and, if improperly claimed, the aid of the Court in compelling the witnesses to answer.

■ After a series of proceedings the Court concluded that there was no reasonable probability that an answer to any of the questions would tend to incriminate the witnesses under any Federal law,[1] and directed the witnesses to

---

1. It is settled that the privilege *against* self-incrimination is available only where the hazard feared is prosecution for the violation of some *Federal* law. It does not matter that an answer might subject the witness to prosecution for the violation of some State statute, or county or city ordinance (United States v. Murdock, 284 U.S. 141, 52 S.Ct. 63, 76

L.Ed. 210; United States v. Greenberg, 3 Cir., 192 F.2d 201 [reversed on other grounds 343 U.S. 918, 72 S.Ct. 674, 96 L.Ed. 1332]; and Graham v. United States, 9 Cir., 99 F.2d 746).

Counsel, in their memoranda, have called the Court's attention to certain dissenting opinions in which this rule is discussed, and have suggested that the

return to the Grand Jury room and answer such questions. The witnesses continued to refuse to answer those questions theretofore ruled upon and, when again brought before the Court by the Grand Jury, the witnesses admitted that the questions were understood, but maintained that the privilege against self-incrimination, embodied in the Fifth Amendment of the Constitution of the United States, authorized such refusal.

The Court now is squarely faced with the issue of whether the witnesses, by refusing to answer said questions, after having been directed to do so by the Court, have each placed themselves in contempt of this Court.

Throughout these proceedings there has been some confusion on the part of counsel as to the proper course to be followed in this, an unfamiliar field. To eliminate any procedural questions here, and at the same time set up a guide for those faced with this problem in the future, the Court will set forth in detail the procedure which should be followed in a proceeding of this nature, together with the applicable law, and then juxtapose the results with the procedure and law actually followed and applied in this proceeding. The witnesses will thus have assurance that they have been afforded all of those rights to which they are entitled.

#### Procedure

I. The witness must be called before a legally constituted Grand Jury and placed under oath.

II. A pertinent question must be propounded to the witness by the prosecuting official or a member of the Grand Jury.

III. The witness must refuse to answer the question on the ground that an answer would tend to incriminate the witness under some Federal law.

IV. The Grand Jury, the prosecuting official and the witness (with his attorney, if he has one) shall come before the Court in open session.

V. The Foreman of the Grand Jury (or the prosecuting official) must inform the Court of the matters set forth in paragraphs I through III above, and ask the advice and assistance of the Court in connection with the privilege claimed.

VI. The Court hears the question which the witness has refused to answer. (This is done by having the Official Court Reporter take the witness stand and read the question to the Court and to those present.)

VII. The Court makes certain that the witness understands the question that has been put to him. (If the witness does not understand the question, it must be re-framed so that there is no doubt that he does understand it.)

VIII. The Court then proceeds to consider the bare question, which the witness has refused to answer, and determines whether or not, from the face of the question, an answer could, in fact, tend to incriminate the witness under any Federal law.

IX. If the question does not, on its face, disclose that an answer would tend to incriminate, the witness is then given an opportunity to be heard and, if it is desired, to introduce any relevant evidence which substantiates the claim that from the implications of the question, in the setting in which it is asked, there is a real and appreciable danger that the answer would be dangerous because an

law should be other than what the majority of the Justices of the Supreme Court of the United States have said that it is. Counsel have suggested that the Court should follow the rule advocated in the dissenting opinions, because they consider it better law. To pass upon the question of which is the better rule of law would serve no useful purpose here, for this Court is duty bound to follow the law as it is set forth in the Constitution, the pertinent statutes and the decisions of courts superior to this Court. Where a course is as clearly marked as it is on this issue, this Court would indeed be guilty of a flagrant violation of its duty were it so presumptuous as to deviate from such patent law.

injurious disclosure might result from it (In re Portell, 7 Cir., 245 F.2d 183; Hooley v. United States, 1 Cir., 209 F.2d 234; and Alexander v. United States, 9 Cir., 181 F.2d 480).

X. If, after a consideration of the question in the light of the evidence adduced, any other relevant facts, and the applicable law, the Court is satisfied that an answer would not tend to incriminate the witness under any Federal law, the Court then rules that the privilege may not be validly claimed and directs the witness to return to the Grand Jury room and answer the question.

XI. Should the witness continue to refuse to answer the question, this fact is reported to the Court in open session with the Grand Jury, the prosecuting official and the witness (with his attorney, if he has one) present.

XII. The Court again hears the question as in step VI, supra.

XIII. The Court then, in the presence of, and on behalf of the Grand Jury, puts the question to the witness and inquires:

A. If the witness understands the question;

B. If the witness understands that the Court has ruled that the privilege against self-incrimination may not be validly claimed for that question, and the Court has ordered him to answer it;

C. If the witness has given all the reasons that he has for his refusal to answer the question; and

D. If the witness still refuses to answer the question as directed by the Court.

XIV. If the witness affirmatively answers each of the four questions set forth in paragraph XIII, supra, the witness has committed a contempt in the presence of the Court. The Court may then certify that it saw and heard the conduct constituting such contempt, and may proceed to punish the witness summarily under the provisions of Rule 42 (a) of the Federal Rules of Criminal Procedure, 18 U.S.C.A.

In the instant proceeding, the precise steps, set forth above, have not been followed to the letter. However, the proceedings have been, if anything, more solicitous of the rights of the witnesses than the bare rules require. It is apparent that the requirements of the law, relative to matters procedural, have been fully and fairly satisfied.

### The Law Involved

■ The Fifth Amendment of the Constitution of the United States provides that "No person * * * shall be compelled in any criminal case to be a witness against himself * * *". Experience, and common sense, have made it abundantly clear that this phrase means more than what the naked words, when individually considered, would add up to, if the right sought to be protected is to be given a realistic and useful meaning. Whatever may have been the historical background of the phrase, or the intention of the Founding Fathers when they placed it in the Bill of Rights, we now recognize that for the Federal courts the rule must be that no person shall at any time be compelled to answer any question, or say anything, which might be the confession of the commission of a public offense, or which might be used against him in an attempt to convict him of a public offense. And this rule is inviolate.

While a statement of the privilege is not difficult, its application in the many possible factual circumstances in which it might arise, poses some rather considerable problems.

■ The first problem to be resolved is: who determines whether an answer to a specific question, put to a person called as a witness before a Grand Jury, will in fact tend to incriminate that person? On this point the law is clear that the decision must be made by the Court, and not by the witness (Rogers v. United States, 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344, and Miller v. United States, 9 Cir., 95 F.2d 492).

■■ The next problem is the selection of the proper test to be applied by

the Court in making this decision. The formulation of a general rule is not easy. The Court must, on the one hand, zealously guard the rights of the individual, and, on the other hand, society must be protected against the nefarious conduct of its members.[2] In the instant proceeding there has been no blanket refusal to answer any question, even those obviously harmless (See Enrichi v. United States, 10 Cir., 212 F.2d 702, and Elwell v. United States, 7 Cir., 275 F. 775, certiorari denied 257 U.S. 647, 42 S.Ct. 56, 66 L.Ed. 415), so the refusal of the witnesses to answer certain questions has not been merely contumacious. For this reason a rule, general in its application, must be selected and applied to each of the questions individually. In selecting the rule to be applied the Court is mindful of the statement that it must be perfectly clear, after a careful consideration of all the circumstances in the case, that the witness is mistaken, and that the answer cannot possibly have a tendency to incriminate (Hoffman v. United States, 341 U.S. 479, at page 488, 71 S.Ct. 814, 95 L.Ed. 1118). Considered in its context, and in the light of other decisions of the Supreme Court of the United States,[3] it would seem more accurate to say that the rule is that it is "enough (1) that the trial court be shown by argument how conceivably a prosecutor, building on the seemingly harmless answer, might proceed step by step to link the witness with some crime against the United States, and (2) that this suggested course and scheme of linkage not seem incredible in the circumstances of the particular case" (United States v. Coffey, 3 Cir., 198 F.2d 438, at page 440). This rule is, of course, an expansion of the doctrine that the privilege may be validly claimed where an answer will, or might, become a "link in the chain of evidence" (Blau v. United States, 340 U.S. 159, 71 S.Ct. 223, 224, 95 L.Ed. 170, and Counselman v. Hitchcock, 142 U.S. 547, 12 S.Ct. 195, 35 L.Ed. 1110).

In applying this doctrine, more is required than the bare possibility that an answer might become a "link". Were more not required, any answer, even one so innocuous as giving one's name, might, by an adequate stretch of the imagination in the right direction, be sufficient to constitute a link in the chain of evidence and so be considered incriminating. The law is not, however, so ludicrous that it will accept such a result as this. Mr. Bumble would have additional justification for his now famous observation if this were the kind of logic which is adopted and followed in establishing the law. To be at all reasonable, the law must require something more than a bare possibility—something more than a remote and naked possibility.

2. In this regard see Stein v. New York, 346 U.S. 156, at page 196, 73 S.Ct. 1077, 1099, 97 L.Ed. 1522, where it is said: "We are not willing to discredit constitutional doctrines for protection of the innocent by making of them mere technical loopholes for the escape of the guilty * * * The people * * * are also entitled to due process of law."

3. For instance, Mason v. United States, 244 U.S. 362, at page 365, 37 S.Ct. 621, at page 622, 61 L.Ed. 1198, where it is said: "To entitle a party called as a witness to the privilege of silence, the court must see, from the circumstances of the case and the nature of the evidence which the witness is called to give, that there is reasonable ground to apprehend danger to the witness from his being compelled to answer * * * Further than this, we are of the opinion that the danger to be apprehended must be real and appreciable, with reference to the ordinary operation of law in the ordinary course of things,—not a danger of an imaginary and unsubstantial character, having reference to some extraordinary and barely possible contingency, so improbable that no reasonable man would suffer it to influence his conduct. We think that a merely remote and naked possibility, out of the ordinary course of law and such as no reasonable man would be affected by, should not be suffered to obstruct the administration of justice * * * it would be to convert a salutary protection into a means of abuse if it were to be held that a mere imaginary possibility of danger, however remote and improbable, was sufficient to justify the withholding of evidence essential to the ends of justice."

Simple logic and sound reason require that there be at least a real and appreciable probability that in the ordinary operation of the law and the ordinary course of things the answer might incriminate, or tend to incriminate, in order to entitle the witness to invoke the privilege of silence (Mason v. United States, supra).

█ It is the duty of the Court to examine each question put to the witness in the light of all of the surrounding circumstances, and reach a conclusion that there is, or is not, a real and appreciable probability that compelling an answer would create, or tend to create, a situation whereby the witness would be forced to incriminate himself. Phrased in another fashion, the Court must decide whether the danger to be apprehended from an answer is near enough to be real, or whether it is too remote to be substantial. As outlined in procedural steps VIII and IX, supra, the question must be considered first for those implications obvious upon its face, and then in the factual context surrounding it, including any matters of which the Court may take judicial notice. Since the witness has the burden of sustaining his claim of privilege (United States v. Rosen, 2 Cir., 174 F.2d 187, and United States v. Weisman, 2 Cir., 111 F.2d 260. And see Alexander v. United States, supra), he must be given adequate latitude in the presentation of evidence, and any other relevant matters, so that the Court will have the benefit of the widest and most comprehensive view of all of the circumstances surrounding the question.

█ In performing the duty imposed on it in a proceeding such as this one, the Court must keep in mind certain fundamental rules which are applicable. At the outset it must be borne in mind that while, as noted already, the witness has the burden of proving that the testimony being sought might be used in a proceeding to establish, or attempt to establish, the witness's guilt of a violation of some Federal law, the privilege is not limited to an answer which would directly incriminate the witness (United States v. Weisman, supra), and the privilege is not limited to the proceeding then being conducted (United States v. Herron, D.C., 28 F.2d 122). A witness is privileged not to answer what at first blush might appear to be a harmless question if the answer to the question would in fact provide either a "link in a chain of evidence" tending to prove the commission of a crime or a clue which would enable the prosecution to discover incriminating evidence (Hoffman v. United States, supra; Blau v. United States, supra; and Starkovich v. United States, 9 Cir., 231 F.2d 411). The burden of proof required of a witness is substantially different from the proof which is ordinarily required in order to establish a claim before a court. The requirement of proof, which would ordinarily be necessary to establish a claim in a court, would in effect nullify the privilege which is guaranteed to the witness (Emspak v. United States, 349 U.S. 190, 75 S.Ct. 687, 99 L.Ed. 997; Hoffman v. United States, supra; Rogers v. United States, supra; and Ex parte Irvine, C.C., 74 F. 954). The witness is not required to demonstrate conclusively that the answer to the question would surely subject him to prosecution, nor does he need to demonstrate that the answer to the question is likely to result in his being convicted of some crime (Emspak v. United States, supra). Likewise the witness does not have to disclose the exact hazard feared (United States v. Zwillman, 2 Cir., 108 F.2d 802). To sustain the privilege, the witness need only make it evident from the question and its implications, considered in the setting in which it is asked, that the answer, or even an explanation as to why it cannot be answered might be dangerous, because an injurious disclosure might result (Emspak v. United States, supra; Hoffman v. United States, supra; Rogers v. United States, supra; and Ex parte Irvine, supra).

█ The privilege granted a witness in order to protect him against self-incrimination must be accorded a liberal

construction in favor of the right it is intended to secure (Quinn v. United States, 349 U.S. 155, 75 S.Ct. 668, 99 L.Ed. 964; Hoffman v. United States, supra; Arndstein v. McCarthy, 254 U.S. 71, 41 S.Ct. 26, 65 L.Ed. 138; Brown v. Walker, 161 U.S. 591, 16 S.Ct. 644, 40 L.Ed. 819; and Counselman v. Hitchcock, supra), and, as has already been suggested, the question addressed to the witness must be construed in the light of the entire setting in which it is asked (Emspak v. United States, supra; Hoffman v. United States, supra; and United States v. Fischetti, D.C., 103 F. Supp. 796). The formal record cannot be used as the exclusive gauge in testing whether a question will subject, or tend to subject, a witness to prosecution (United States v. Singleton, 3 Cir., 193 F.2d 464), but to the contrary, the Court must use its own perception of the peculiarities of the case and integrate them with the facts developed by the evidence adduced (Hoffman v. United States, supra; Kiewel v. United States, 8 Cir., 204 F.2d 1; and Ex parte Irvine, supra). And, in using its perception and considering the evidence, the Court must not be skeptical (Emspak v. United States, supra; and United States v. Coffey, supra), but must at all times have in mind the rule peculiar to proceedings such as this one whereby evidence of bad character, if it exists, may prove bene-

ficial to the witness (United States v. Girgenti, 3 Cir., 197 F.2d 218) by raising the inference that people who live outside the law well may find themselves trapped by a question which to an ordinary person would be quite innocuous.

Having in mind each and all of the rules above outlined, the Court has examined with meticulous care each and everyone of the questions which the witnesses in the instant proceedings have refused to answer. As there can be no general ruling as a matter of law, each of the questions asked of each of the witnesses will be considered separately in the light of all of those things of which the Court can take judicial notice, supplemented by all of the evidence and other matters brought to the attention of the Court at the time of the hearings, which were held at the request of, and for the benefit of the witnesses.[4] After such consideration, an independent ruling will be made as to each question, which each of the witnesses has declined to answer.

### Order as to Sally Ann Hitson

The witness, Sally Ann Hitson, was asked, among other questions, each of the questions numbered 1 to 10, inclusive, and separately listed below. She informed the Court that she understood each of the listed questions, and that she understood that the Court had directed

---

4. At the hearings four things were developed. They are:

a. The present Grand Jury is a general Grand Jury, as distinguished from a Special Grand Jury.

b. So far as is known, the Grand Jury's investigation, insofar as these proceedings are concerned, is concerned exclusively with alleged violations of the White Slave Traffic law (Title 18 U.S. C.A. § 2421).

c. The witnesses are each considered by the prosecuting officials to be victims, rather than violators of any Federal law.

d. Neither witness has ever filed any Federal Income Tax Return.

It was suggested on behalf of the witnesses that they might possibly be:

1. Charged with violations of the Internal Revenue laws of the United States; and

2. Charged with conspiracy to violate the White Slave Traffic laws.

The first possibility deserves consideration, and has been given consideration by the Court in reaching its conclusions. The second possibility is without merit. The applicable statutes are for the protection of the woman who is transported for the purpose of prostitution, or other immoral purposes, and does not authorize prosecution for her acquiescence and participation in that offense (United States v. Martin, 7 Cir., 191 F.2d 569; Miller v. United States, 9 Cir., 95 F.2d 492; and United States v. Jamerson, D.C., 60 F.Supp. 281). No question propounded to the witnesses shows, or even suggests, an answer that would do more than show that the witness consented to transportation for the purpose of prostitution.

her to answer each of these questions. Notwithstanding these facts, she refused to answer each of said questions, stating as the sole ground for her refusal to answer each question that to do so might tend to incriminate her.

### Questions

1. How long have you lived in Nevada?

2. What is your occupation?

3. Have you ever been engaged in prostitution?

4. Have you ever had occasion to go from one place to another to find employment?

5. Has anyone ever assisted you in finding a place to work as a prostitute?

6. Have you ever engaged in prostitution in more than one place?

7. How did you travel from one place to another?

8. Who drove you or obtained transportation for you?

9. If you worked as a prostitute did anyone ever suggest where you should work?

10. If such a suggestion was made how was it made?

The Court is of the view that there is no reasonable probability that the witness would have, or could have, incriminated herself under any Federal law if she had answered the questions numbered 1 to 10, inclusive, and separately listed above. The Court is further of the view that the refusal to abide by the Court's ruling as to each of these questions was, and is, a separate contempt committed in the actual presence of the Court, and in this connection, the Court here and now certifies that he saw and heard the conduct constituting said acts of contempt. An order of contempt will accordingly be entered as to the witness, Sally Ann Hitson.

It is, therefore, ordered, adjudged and decreed that the said Sally Ann Hitson is guilty of a separate and distinct contempt of this Court for having wilfully failed and refused, as aforesaid, to answer each of the aforementioned questions (numbered 1 to 10, inclusive, above) as directed by the order of this Court;

And further, it is ordered, adjudged and decreed that the said Sally Ann Hitson forthwith pay to the Clerk of this Court a fine of $50 for each separate contempt (that is, her failure to answer each of the aforementioned ten questions) committed by her, and that the said Sally Ann Hitson be imprisoned in a jail-type institution to be selected by the Attorney General, there to remain charged with contempt, until she answers each and all of the questions which the Court has directed her to answer, and that a commitment issue forthwith to carry this judgment into effect.

### Order as to Shirley Joyce McGowan

The witness, Shirley Joyce McGowan, was asked, among other questions, each of the questions numbered 1 to 20, inclusive, and separately listed below. She informed the Court that she understood each of the listed questions, and that she understood that the Court had directed her to answer each of these questions. Notwithstanding these facts, she refused to answer each of said questions, stating as the sole ground for her refusal to answer each question that to do so might tend to incriminate her.

### Questions

1. What is your occupation?

2. Have you ever been engaged in prostitution?

3. Has anyone ever assisted you in finding a place to work as a prostitute?

4. Were you in Elko, Nevada, on or about February 21, 1959?

5. From where did you travel when you went to Elko, Nevada, on or about February 21, 1959?

6. How did you get there?

7. With whom did you go?

8. Why did you go to Elko, Nevada?

9. Who suggested that you go to Elko?

10. When did you leave Elko, Nevada?

11. Where did you go from Elko, Nevada?

12. How did you go from Elko?

13. With whom did you go from Elko, Nevada?

14. Who suggested that you leave Elko?

15. Have you ever been in Winnemucca, Nevada?

16. When was the last time?

17. Were you in Winnemucca, Nevada, in February, March, April or May of 1959?

18. How did you go to Winnemucca?

19. Who suggested that you go to Winnemucca?

20. Who provided the transportation?

The Court is of the view that there is no reasonable probability that the witness would have, or could have, incriminated herself under any Federal law if she had answered the questions numbered 1 to 20, inclusive, and separately listed above. The Court is further of the view that the refusal to abide by the Court's ruling as to each of these questions was, and is, a separate contempt committed in the actual presence of the Court, and in this connection, the Court here and now certifies that he saw and heard the conduct constituting said acts of contempt. An order of contempt will accordingly be entered as to the witness, Shirley Joyce McGowan.

It is, therefore, ordered, adjudged and decreed that the said Shirley Joyce McGowan is guilty of a separate and distinct contempt of this Court for having wilfully failed and refused, as aforesaid, to answer each of the aforementioned questions (numbered 1 to 20, inclusive, above) as directed by the order of this Court;

And further, it is ordered, adjudged and decreed that the said Shirley Joyce McGowan forthwith pay to the Clerk of this Court a fine of $50 for each separate contempt (that is, her failure to answer each of the aforementioned twenty questions) committed by her, and that the said Shirley Joyce McGowan be imprisoned in a jail-type institution to be selected by the Attorney General, there to remain charged with contempt, until she answers each and all of the questions which the Court has directed her to answer, and that a commitment issue forthwith to carry this judgment into effect.